**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF:** | § | |
| | § | |
| **DANIEL EUGENE MCCANTS, SR.** | § | |
| | § | |
| **DEBTOR** | § | |
| _____ | § | |
| | § | |
| **DANIEL EUGENE MCCANTS, SR.** | § | |
| **AND TRACY KNOX MCCANTS,** | § | |
| | § | |
| **PLAINTIFFS** | § | **CASE NO. 21-00129** |
| **vs.** | § | |
| | § | |
| **DOVENMUEHLE MORTGAGE, INC.,** | § | |
| **and VILLAGE CAPITAL &** | § | |
| **INVESTMENT LLC,** | § | **JURY DEMANDED** |
| | § | |
| **DEFENDANTS** | § | |
| _____ | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

Daniel Eugene McCants Sr. and Tracy Knox McCants, Plaintiffs, file this Original Complaint against Dovenmuehle Mortgage, Inc. ("Dovenmuehle") and Village Capital & Investment LLC ("Village Capital," and with Dovenmuehle collectively the "Defendants") seeking damages and other relief from the Court for Defendants' violations of the Real Estate Settlement Procedures Act and other statutory causes of action related to the servicing of Plaintiffs' mortgage loan.

### I. INTRODUCTION

1. Plaintiff Daniel McCants is a veteran of the United States Army who served our country for 22 years. He has been classified as 100% disabled by the U.S. Veteran's Administration. He became disabled as a result of a series of heart attacks while on deployment,

which gave rise to a host of additional ailments.

2. In 2016, Plaintiffs purchased a permanent residence in Killeen, Texas.

3. In 2017, one of their children became pregnant, gave birth to a baby girl, and then died three days later of a brain aneurism. In addition to the devastating emotional impact of their daughter's death, the McCants suffered financially as a result of the additional medical bills and funeral costs. In addition, they assumed parental responsibilities for their new grandchild.

4. The McCants also assisted two of their other children with payment of their student loans, obtaining high interest payday loans to help make the regular student loan payments. Based on these increasing burdens, the McCants fell behind on their mortgage obligations in late 2018.

5. Plaintiffs sought modification on their home loan in February of 2019. With the help of counsel—whose practice includes consumer bankruptcy and assisting clients with home loan modifications—Plaintiffs submitted a complete loss mitigation application to their mortgage servicer, Dovenmuehle, on February 26, 2019. Dovenmuehle requested additional documentation, which Plaintiffs provided in duplicate, providing every document requested for the specified time period.

6. Notwithstanding the fact that Plaintiffs had submitted a complete application, Dovenmuehle referred Plaintiffs' loan account to its foreclosure attorneys, who promptly posted Plaintiffs' home for foreclosure in May of 2019—before Dovenmuehle had declined Plaintiffs' modification application. This was in clear violation of the provisions of the Real Estate Settlement Procedures Act ("RESPA") which prohibit "dual-tracking," that is, the illegal practice of considering modification applications while simultaneously proceeding towards foreclosure.

7. Despite bankruptcy counsel's last-minute heroic efforts in reaching out to

Dovenmuehle and its foreclosure counsel, Dovenmuehle refused to cease its foreclosure efforts, which forced Plaintiffs to file a Chapter 7 bankruptcy case. Upon receiving their discharge, Plaintiffs again approached Dovenmuehle about a modification. Dovenmuehle and its foreclosure counsel again refused to cease its foreclosure efforts, forcing Mr. McCants to file a Chapter 13 bankruptcy case.

8.     As more fully described below, Plaintiffs have been damaged by Dovenmuehle's illegal actions. Plaintiffs were forced to file a Chapter 7 case, and then Mr. McCants had to file a subsequent Chapter 13, and pay additional fees and commissions in connection with the Chapter 13 case, to avoid foreclosure. Mr. McCants has also been required to obtain a job to cover the additional expenses resulting from Dovenmuehle's violation of RESPA, which has put his health at risk. In addition, Mr. McCants will lose valuable disability benefits if he continues to work.

9.     This is an action for actual and statutory damages filed by Plaintiffs for violations of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA") and of the Regulations enacted pursuant thereto by the Consumer Financial Protection Bureau ("CFPB").

10.     This action is specifically filed to enforce the Regulations that became effective on January 10, 2014, specifically 12 CFR Section 1024.41 of Regulation X.[1]

11.     The Plaintiffs have a private right of action under the Real Estate Settlement Procedures Act, 12 USC § 2605(f) for these violations and such an action includes actual damages, costs, statutory damages and attorneys' fees. An action seeking relief under section 2605 may be brought in federal or state court. 12 U.S.C. § 2614.

---

[1] In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010). Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR 10901 (Regulation Z)(February 14, 2013) and 78 FR 10695 (Regulation X)(February 14, 2013). These Regulations became effective on January 10, 2014.

12. The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2 (b) of Regulation X.

13. Because Dovenmuehle is the servicer of Plaintiffs' loan, it is the agent for Village Capital, who is the owner of Plaintiffs' loan. Accordingly, Village Capital is liable for the actions of Dovenmuehle.

14. Dovenmuehle is subject to Regulations and does not qualify for any of the exceptions noted in the said Regulations for "small servicers." Neither is Defendant a "qualified lender," as defined in 12 CFR 617.7000.

## II. JURISDICTION AND VENUE

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction). The Court has jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 (Supplemental Jurisdiction).

16. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claims occurred in this district, and Plaintiffs' Chapter 7 and 13 bankruptcy cases were filed in this district. Defendants wrongful acts were committed in this district, and Defendants regularly transacts business in this district.

## III. PARTIES

17. Plaintiffs, Daniel E. McCants, Sr. and Tracy K. McCants, are citizens and residents of Killeen, Texas. Daniel E. McCants, Sr. is a Debtor in Chapter 13 Bankruptcy Case number 19-60811 filed in the Western District of Texas, Waco Division, on October 30, 2019. The Plaintiffs are hereinafter referred to as the "Plaintiffs" or the "Debtors."

18. Defendant Dovenmuehle Mortgage, Inc. is a corporation organized under the laws of the State of Delaware with a principal office and mailing address of 1 Corporate Drive, Suite

360, Lake Zurich, Illinois, 60047. Its registered agent in Texas is CT Corporation System at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

19. Defendant Village Capital & Investment LLC is a corporation organized under the laws of the State of Delaware with a principal office and mailing address of 700 East Gate Drive, Suite 520, Mount Laurel, New Jersey, 08054. Its registered agent in Texas is National Registered Agents, Inc. at 1999 Bryant St., Suite 900, Dallas, Texas 75201-3136.

## IV. FACTUAL ALLEGATIONS

### a. The Home Loan.

20. The McCants purchased their homestead, located at 6504 Tanzanite Drive, Killeen, Texas 76542 (the "Homestead Property") in 2016.

21. In 2017, the McCants refinanced the existing loan on their Homestead Property so to obtain a more favorable interest rate. The McCants refinanced through Village Capital & Investment, LLC.

22. In connection with the refinance of their Homestead Property, Plaintiffs executed a note dated July 18, 2017 in favor of Village Capital & Investment, LLC in the amount of $278,535.00, with an initial annual interest of 2.250%, subject to periodic adjustment (the "Note"). Plaintiffs' mortgage loan was secured by the Homestead Property pursuant to a deed of trust executed by Plaintiffs on that same date (the "Deed of Trust"). The Note and Deed of Trust are referred to collectively as the "Loan."

23. True and correct copies of the Note and Deed of Trust are attached hereto as Exhibit 1.

24. Dovenmuehle is the current servicer of the Loan.

### b. Mr. McCants is a disabled veteran of the United States Army.

25. Mr. McCants is a veteran of the United States Army who served our country for

22 years.  He served on three deployments in the Middle East, including two in Iraq and one in Jordan. He has been diagnosed with anxiety-based posttraumatic stress disorder.  He also suffers with sleep apnea and insomnia.  He has arthritis in his hands, knees and hips, causing significant pain and limiting his flexibility and functionality.

26.     While on deployment, Mr. McCants suffered a series of four heart attacks.  The first three heart attacks went undiagnosed, because the doctors on duty during deployment were training doctors without the necessary expertise to recognize those cardiac events. In 2012 he suffered his fourth heart attack—this time a major heart attack.  It was at this time that the doctors determined that he had at least three prior heart attacks.

27.     In 2013, Mr. McCants received his medical discharge from the U.S. Army based on the foregoing conditions and other medical issues.  The U.S. Veteran's Administration has classified him as 100% disabled.  As a result, the Veteran's Administration pays Mr. McCants disability payments of approximately $3,300 each month.  Mr. McCants also receives monthly Social Security disability payments in the amount of approximately $1,690.

28.     In 2017, the McCants' oldest child became pregnant, gave birth to a baby girl, and then died three days later of a brain aneurism. In addition to the devastating emotional impact of their daughter's death, the McCants suffered financially as a result of the additional medical bills and funeral costs. Even as of 2018, the McCants were still paying off their daughter's funeral expenses. The McCants also assumed parental responsibilities, and the accompanying financial burden, for their new grandchild.

29.     The Plaintiffs also assisted their younger two children in paying down their student loans. In order to pay these amounts, Plaintiffs relied on pay day loans with extremely high interest rates.  As a condition to paying these loans, the lenders required access to Plaintiffs'

bank accounts in order to auto-draft the monthly loan payments.

30.     Based on these financial pressures, the McCants fell behind on their mortgage loan as of October/November 2018.

**c.  *The McCants apply for a modification of their home loan.***

31.     Based on these events, Plaintiffs submitted a complete home loan modification application to Dovenmuehle (the "Application") on February 26, 2019 through their bankruptcy counsel.

32.     A true and correct copy of the Application is attached hereto as <u>Exhibit</u> <u>2</u>.

33.     Plaintiffs submitted the Application on the Loss Mitigation form sent to Plaintiffs and their counsel by Dovenmuehle, and the application contained all the documents requested by Dovenmuehle on the form.

34.     Plaintiff's counsel submitted the application by facsimile and email, using the fax number and email address designated by Dovenmuehle on the Loss Mitigation application form. *Id*.

35.     At the time Plaintiffs submitted their loss mitigation application to Dovenmuehle, Plaintiffs was due for November 2018 and was therefore less than 120 days delinquent.  This application was submitted under 12 CFR § 1024.41.

36.     On March 5, 2019, Dovenmuehle sent Plaintiffs a request for additional documents.

37.     A true and correct copy of the March 5, 2019 correspondence from Dovenmuehle is attached hereto as <u>Exhibit</u> <u>3</u>.  The March 5, 2019 expressly acknowledged receipt of Plaintiffs' February 26, 2019 loss mitigation application.

38.     The March 5, 2019 request for documents contains the following statement:

<u>Suspension of Foreclosure</u>: Foreclosure referral will not occur while a complete loss mitigate package is being reviewed or if we extend you an offer for a home retention workout option, and the applicable time period to accept such an offer has not expired.

*Id.* at pg. 4.

39.     On that exact same day—March 5, 2019—Dovenmuehle referred the McCants to foreclosure and sent Plaintiffs a letter notifying them of same.

40.     A true and correct copy of the March 5, 2019 letter from Dovenmuehle referring the McCants' account to foreclosure counsel is attached hereto as <u>Exhibit 4</u>.

41.     In the March 5, 2019 referral letter, Dovenmuehle identified Mackie, Wolf, Zientz & Mann, P.C. as its foreclosure counsel and directed Plaintiffs to contact counsel if they wished to reinstate their mortgage.  *Id.*

42.     On March 20, 2019, Dovenmuehle claims that it sent an additional request for documents directly to the McCants.

43.     The McCants, however, never received the March 20, 2019 letter. *See* attached Declaration of Daniel Eugene McCants Sr. at <u>Exhibit 5</u>.

44.     In addition, the McCants' bankruptcy counsel did not receive the March 20, 2019 letter. *See* Declaration of Erin B. Shank at <u>Exhibit 6</u>.

45.     The McCants' bankruptcy counsel was not copied on the March 20, 2019, despite prior instructions that all communications with the McCants be made through counsel. *See* February 26, 2019 authorization letter from the McCants included in Exhibit 2, requesting that all communications regarding the modification go through the McCants' attorney, Erin Shank.

46.     The McCants and their bankruptcy counsel only became aware of the March 20, 2019 letter in May of 2020—well after Defendants violated the dual tracking prohibition under RESPA—when Dovenmuehle produced the letter in response to Plaintiffs' Notice of Error.

47.	A copy of the alleged March 20, 2019 letter is attached hereto as <u>Exhibit 7</u>.

48.	Dovenmuehle's March 20, 2019 request for additional documents did not contain any deadlines for Plaintiffs to provide the requested documents. In addition, it appears to be duplicative of the request for documents made by Dovenmuehle on March 5, 2019. *See* Exhibit 3.

49.	On March 25, 2019, Plaintiffs, through their bankruptcy counsel, responded to Dovenmuehle's March 5, 2019 request for additional documents, and the oral and email requests from Dovenmuehle, by providing additional documents and a detailed explanation in support of the application.

50.	A true and correct copy of the March 25, 2019 letter from Plaintiffs' bankruptcy counsel is attached hereto as <u>Exhibit 8</u>.

51.	Plaintiffs' loss mitigation application was, at a minimum, facially complete as of March 25, 2019, because Plaintiffs provided all missing documents and information requested in the March 5, 2019 letter from Dovenmuehle at Exhibit 3, as described in 12 C.F.R. 1024.41(c)(2)(iv).

52.	Plaintiffs were unaware of the document request contained in the March 20, 2020, because they had never received this letter.

53.	During this time, the McCants' counsel, Ms. Shank, was persistently pursing a modification on behalf of her clients, and her paralegal was in constant contact with Dovenmuehle's loss mitigation department. Counsel's paralegal contacted Dovenmuehle approximately two times a week during this period.

54.	Also during this time, the McCants were eagerly assisting their counsel with the loss mitigation application. In keeping with these efforts, the McCants would immediately

notify their counsel of all correspondence from Dovenmuehle and would hand deliver all mail they received. If they had received the alleged March 20, 2020 letter from Dovenmuehle, they would have immediately delivered it to their counsel. *See* Exhibit 5.

55.     On April 1, 2019, a paralegal from Plaintiffs' counsel's firm called Dovenmuehle to determine the status of the home loan modification application. During this call, Dovenmuehle made an oral request for additional documents in support of Plaintiffs' modification application.

56.     In response to the oral request for additional documents in the April 1, 2019 call, Plaintiffs, through counsel, sent a letter to Dovenmuehle dated April 10, 2019 which contained all additional documents requested.

57.     A true and correct copy of the April 10, 2019 letter from Plaintiffs' counsel is attached hereto as <u>Exhibit 9</u>.[2]

58.     Again, Plaintiffs' loss mitigation application was complete, because Plaintiffs had submitted their original application and timely and completely responded to all requests for additional information.

### d. Dovenmuehle posts for foreclosure before denying complete modification application.

59.     Despite the fact that Plaintiffs had submitted a complete loss mitigation application as of March 25, 2019 and submitted supplemental documentation by April 11, 2019, on April 15, 2019, Dovenmuehle's attorneys, Mackie, Wolf, Zientz & Mann, P.C., posted the McCants' Homestead Property for non-judicial foreclosure sale scheduled to occur on May 7,

---

[2] Plaintiffs' counsel made multiple attempts to fax the April 10, 2019 letter to Dovenmuehle on April 11, 2019, but it appears that the faxes did not go through because no fax machine was detected (and therefore Dovenmuehle's fax line was not working). In any event, Plaintiff's counsel successfully emailed the April 10, 2019 letter to Dovenmuehle's designated loss mitigation email address on April 11, 2019. *See* April 11, 2019 email attached as last page of Exhibit 9. As stated herein, Dovenmuehle subsequently acknowledged receipt of the additional documents provided in the April 10, 2019 letter.

2019 on the courthouse steps in Bell County, Texas by filing a Notice of Foreclosure Sale.

60.     A true and correct copy of the Notice of Foreclosure is attached hereto as <u>Exhibit 10</u>.

61.     Two days later, in a letter dated April 17, 2019, Dovenmuehle denied Plaintiffs' home loan modification application on the false grounds that Dovenmuehle had not timely received all of the additional documents it had requested.

62.     A true and correct copy of the April 17, 2019 letter from Dovenmuehle is attached hereto as <u>Exhibit</u> <u>11</u>.

63.     Again, Dovenmuehle sent the April 17, 2019 denial letter directly to the McCants, and not their counsel, despite prior instructions that all communications with the McCants be made through counsel. *See* February 26, 2019 authorization letter from the McCants included in Exhibits 2 and 5, requesting that all communications regarding the modification go through the McCants' attorney, Erin Shank.

64.     In its April 17, 2019 denial letter, Dovenmuehle lists out the documents it purportedly did not receive.  However, Plaintiffs, through the April 10, 2019 letter from bankruptcy counsel and previous correspondence, had already provided each of the documents listed.  *See* Exhibit 2, 8 and 9.

65.     As argued in bankruptcy counsel's May 6, 2019 Notice of Error attached as Exhibit 16, *supra*, and discussed in more detail below, Plaintiffs had already provided the documentation requested by Dovenmuehle listed on its April 17, 2019 denial letter, notwithstanding the fact that Plaintiffs never received the March 20, 2019 letter: Plaintiffs submitted a Hardship Affidavit signed by both Plaintiffs (provided multiple times), the requested

bank records, evidence of other bank accounts being closed, and pay stubs for Tracy McCants.[3]

To the extent that Dovenmuehle asserts that Plaintiffs had to re-date page 6 of the loss mitigation

application, Plaintiffs assert that it was an error under RESPA to request the borrowers change

the date of their application, and in any event, this does not alter the fact that Plaintiffs submitted

a facially complete loss mitigation application by at least March 25, 2019.

### e. *Plaintiffs protest dual tracking through RESPA correspondence.*

66.     On April 25, 2019, Plaintiffs' bankruptcy counsel sent a Notice of Error ("NOE")

to Steven Wu, an attorney with Mackie, Wolf, Zientz & Mann, P.C. and Dovenmuehle stating

that Plaintiffs had submitted a complete home loan modification application to Dovenmuehle and

that their simultaneous attempt to foreclose on the McCants' home violated the "dual tracking"

provisions of RESPA.

67.     A true and correct copy of the April 25, 2019 NOE is attached hereto as <u>Exhibit</u>

<u>12</u>.

68.     On April 29, 2019, Dovenmuehle acknowledged receipt of that letter.

69.     A true and correct copy of the April 29, 2019 acknowledgement from

Dovenmuehle is attached hereto as <u>Exhibit</u> <u>13</u>.

70.     The next day, April 30, 2019, Dovenmuehle wrote Mr. McCants a letter providing

---

[3] Furthermore, Dovenmuehle's April 17, 2019 denial letter asserted that the McCants failed to provide certain updated documents, specifically, Tracy McCants' paystubs from "3/17-current" and February to March bank statements for a particular bank account. This assertion is disingenuous, however, because (a) the McCants had already provided these documents for prior relevant time periods, including February and March 2019 paystubs for Mrs. McCants, as well as account information for the specified bank account for February 2019 and prior months, and (b) Dovenmuehle had not requested more recent statements for those items in any of its communications with Plaintiffs or their counsel, including the April 1, 2019 phone call with Plaintiffs' counsel. Dovenmuehle therefore denied the application for alleged incompleteness based on documents that Dovenmuehle had never requested. Comment 41(b)(2)(i)(B) of Supplement I to 12 C.F.R. §1024.41 requires a servicer to "promptly request" additional information or corrected documents from the borrower pursuant to the reasonable diligence requirements set forth in the Rule and Comments.

a list of possible options to avoid foreclosure, including modification, refinance and forbearance—even though he had already submitted a modification application.

71.     A true and correct copy of the April 30, 2019 letter from Dovenmuehle is attached hereto as <u>Exhibit 14</u>.

72.     In late April or early May 2019, Plaintiffs' counsel called Steven Wu of Mackie, Wolf, Zientz & Mann, P.C. and explained that the McCants had a home loan modification application pending with Dovenmuehle, and further inquired if Mackie, Wolf, Zientz & Mann, P.C. intended to go forward with the foreclosure.  Mr. Wu replied that Mackie, Wolf, Zientz & Mann, P.C. would indeed be going forward with the foreclosure on May 7, 2019, despite the pending modification application.

### f.  The Chapter 7 Bankruptcy Case and preservation of dual tracking claims.

73.     On May 3, 2019, Plaintiffs filed their Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Texas, Waco Division, under Case No. 19-60314, to avoid the foreclosure scheduled for May 7, 2019.  Ch. 7 Docket No. 1.[4]  Plaintiffs' bankruptcy counsel sent a letter to Mr. Steven Wu of Mackie, Wolf, Zientz & Mann, P.C. dated May 3, 2019, informing him of the bankruptcy filing and providing a copy of the notice of same.

74.     A true and correct copy of the May 3, 2019 letter from Plaintiffs' bankruptcy counsel to Steven Wu is attached hereto as <u>Exhibit 15</u>.

75.     Plaintiffs disclosed on their Schedule B (Personal Property) and Schedule C (Exempt Property) the existence of a cause of action against Dovenmuehle and/or Village Capital & Investment, LLC for violations of RESPA.  Ch. 7 Docket No. 1.

---

[4] References to the Docket and filings in Plaintiffs' Chapter 7 bankruptcy case are herein referred to as "Ch. 7 Docket No."  References to the docket and filings in Mr. McCants' subsequent Chapter 13 bankruptcy case are herein referred to as "Ch. 13 Docket No."

### g. *Additional RESPA correspondence.*

76.     In a NOE dated May 6, 2019, Plaintiffs' bankruptcy counsel responded to Dovenmuehle's April 17, 2019 denial letter, wherein counsel stated that Plaintiffs had already provided the requested documents seven days prior, on April 10, 2019.

77.     A true and correct copy of the May 6, 2019 NOE is attached hereto as Exhibit 16.

78.     In the May 6, 2019 NOE, Plaintiffs' bankruptcy counsel further stated that it was error for Dovenmuehle to schedule a foreclosure sale of the McCants home on April 15, 2019 while an application was still pending, in violation of the "dual tracking" prohibitions of 12 C.F.R. § 1024.41(f). Counsel also stated that Mr. Wu's representation that Mackie, Wolf, Zientz & Mann, P.C. intended to go forward with the foreclosure despite the pending modification application also violated the dual tracking prohibitions under RESPA. Counsel asserted that it was error for Dovenmuehle to send the April 17, 2019 letter directly to the McCants, and not through counsel as directed. Finally, counsel expressed Plaintiffs' continuing desire to enter a home loan modification and attached much of the same documentation previously submitted.

79.     Shortly after the Chapter 7 bankruptcy filing, Mackie, Wolf, Zientz & Mann, P.C. sent Plaintiffs' bankruptcy counsel a letter dated May 8, 2019, inquiring as to whether he and his wife were interested in pursuing "foreclosure prevention alternatives in relating to the bankruptcy filing," and directing them to call Dovenmuehle to discuss options that may be available.

80.     A true and correct copy of the May 8, 2019 letter from Mackie, Wolf, Zientz & Mann, P.C. is attached hereto as Exhibit 17.

81.     The May 8, 2019 from Mackie, Wolf, Zientz & Mann, P.C. letter requested that Plaintiffs compile certain documentation prior to contacting Dovenmuehle. *Id.* Dovenmuehle's

foreclosure counsel sent this letter despite the fact that Plaintiffs already had a loan modification pending.

82.     In the letter to Plaintiffs' bankruptcy counsel dated May 8, 2019, Dovenmuehle stated that no RESPA violations had occurred in connection with Plaintiffs' account. <u>Exhibit</u> <u>18</u>.

83.     In this letter, Dovenmuehle also claims that a "denial letter was issued on April 17, 2019 and mailed to the borrower to notify the borrower that no complete package had been sent and that we were proceeding with foreclosure." *Id*. Dovenmuehle's May 8, 2019 letter included a copy of its April 17, 2019 letter.

84.     Also during the Chapter 7 bankruptcy, Dovenmuehle sent Plaintiffs' bankruptcy counsel a letter dated May 13, 2019 stating that Mr. McCants might be eligible for protections under the Serviceman's Relief Act.

85.     A true and correct copy of the May 13, 2019 letter from Dovenmuehle is attached hereto as <u>Exhibit</u> <u>19</u>.

86.     In addition, Dovenmuehle sent Plaintiffs and their counsel an email and a letter both dated May 17, 2019 which each stated that the loan modification application was complete.

87.     True and correct copies of the May 17, 2019 email and May 17, 2019 letter from Dovenmuehle are attached hereto as <u>Exhibits</u> <u>20</u> and <u>21</u>, respectively.

88.      Dovenmuehle admitted that the application was complete, despite the fact that Plaintiffs had not submitted any new documentation to Dovenmuehle since prior to the bankruptcy filing, during the dual tracking period.[5]

89.     Dovenmuehle thereafter sent an additional letter to the McCants dated June 3,

---

[5] Plaintiffs' bankruptcy counsel had submitted documents in connection with its May 3, 2019 Notice of Error, but these documents were duplicative of documents previously sent to Dovenmuehle, and counsel's May 3, 2019 Notice of Error was sent to correct Dovenmuehle's April 17, 2019 denial letter which incorrectly asserted that Plaintiffs had not yet submitted a complete application.

2019 which appeared to indicate that the McCants had been offered a home loan modification but had not timely responded to that offer. This statement is not correct.  To the extent the June 3, 2019 letter from Dovenmuehle was a denial of the McCants' loss mitigation application, this letter failed to provide a specific reason for the denial, including the investor/owner requirement that formed the basis of the denial as required under Comment 41(d)(1) of Supplement I to section 1024.41.

90.     A true and correct copy of the June 3, 2019 letter from Dovenmuehle is attached hereto as Exhibit 22.

91.     In response, Plaintiffs' bankruptcy counsel sent a NOE to Dovenmuehle dated June 7, 2019 requesting copies of the alleged modification offer.

92.     A true and correct copy of the June 7, 2019 NOE is attached hereto as Exhibit 23.

93.     The NOE specifically stated that Plaintiffs did not receive a home loan modification offer and did not received notice of the right to appeal.  Id.

94.     Dovenmuehle acknowledged receipt of Plaintiffs' June 7, 2019 NOE on both June 10, 2019 and June 12, 2019.

95.     True and correct copies of the June 10, 2019 and June 12, 2019 acknowledgements are attached hereto as Exhibits 24 and 25, respectively.

96.     Dovenmuehle sent the McCants a letter dated June 24, 2019 stating that their time to appeal their loss mitigation denial had expired.

97.     A true and correct copy of the June 24, 2019 letter from Dovenmuehle is attached hereto as Exhibit 26.

98.     Dovenmuehle responded to Plaintiffs' June 7, 2019 NOE by correspondence dated July 2, 2019, which stated Dovenmuehle's position that it had committed no error in the

servicing of Plaintiffs' request for a home loan modification. <u>Exhibit 27</u>.

99.     Plaintiffs' bankruptcy counsel sent Dovenmuehle an additional NOE dated July 5, 2019.

100.     A true and correct copy of the July 5, 2019 NOE is attached hereto as <u>Exhibit 28</u>.

101.     In the July 5, 2019 NOE, bankruptcy counsel for the McCants stated that the June 24, 2019 letter from Dovenmuehle constituted an error under RESPA because, contrary to the assertions in said letter, Dovenmuehle never offered or denied the McCants a loss mitigation modification on their home loan. *Id*. Because of this, Plaintiffs never received any notice of appeal rights relating to an offer or denial of an offer.

102.     Dovenmuehle's "litigation attorney," Charles Portman, thereafter sent a letter to Plaintiffs' bankruptcy counsel dated July 9, 2019, stating that no errors had occurred in the servicing of Plaintiffs' request for a home loan modification.

103.     A true and correct copy of the July 9, 2019 letter from Mr. Portman is attached hereto as <u>Exhibit 29</u>.

104.     In his letter, Mr. Portman appeared to state that Plaintiffs were denied a home loan modification based on a letter from the U.S. Department of Veterans' Affairs dated June 3, 2019. *Id*. Mr. Portman further stated that Dovenmuehle had, in fact, not offered the McCants a home loan modification, and that the language stating "…" was form language that did not apply to Plaintiffs. *Id*. Mr. Portman apologized for the confusion caused by this form. *Id*.

### h.  *Plaintiffs receive their Chapter 7 Discharge, Dovenmuehle posts for foreclosure again.*

105.     On August 1, 2019, Plaintiffs received a discharge in their Chapter 7 bankruptcy case. *See* Ch. 7 Docket No. 17.

106.     A true and correct copy of the discharge order is attached hereto as <u>Exhibit 30</u>.

107.    Following their discharge, Plaintiffs immediately began to find a lender to refinance their home so they could get out from under the thumb of Dovenmuehle. Plaintiffs' efforts were not successful because most underwriters will not make a loan on a home (or refinance) until two years after a bankruptcy discharge.

108.    In a last-ditch effort to talk sense into Dovenmuehle, Plaintiffs' bankruptcy counsel sent a letter dated August 7, 2019 to "Mary Ann," an employee in Dovenmuehle's Bankruptcy Department who had previously interacted with the McCants' account, in which counsel pleaded for a home loan modification for this disabled veteran and his wife.

109.    A true and correct copy of the August 7, 2019 letter from Plaintiffs' bankruptcy counsel is attached hereto as Exhibit 31.

110.    Dovenmuehle responded to Plaintiffs' request for modification with another letter from Charles Portman, litigation attorney, dated August 13, 2019, which was essentially a word-for-word repeat of Mr. Portman's' July 9, 2019 letter stating that no error had occurred.

111.    A true and correct copy of the August 13, 2019 letter from Mr. Portman is attached hereto as Exhibit 32.

112.    On September 5, 2019, Dovenmuehle's attorneys, Mackie, Wolf, Zientz & Mann, P.C., again posted the McCants' Homestead Property for non-judicial foreclosure sale scheduled to occur on November 5, 2019 on the courthouse steps in Bell County, Texas by filing a Notice of Foreclosure Sale.

113.    A true and correct copy of the Notice of Foreclosure is attached hereto as Exhibit 33.

114.    Dovenmuehle also sent the McCants a letter dated September 9, 2019 asking if they would like to apply for a home loan modification.

115.    A true and correct copy of the September 9, 2019 letter from Dovenmuehle is attached hereto as Exhibit 34.

116.    In.a Request for Information ("RFI") under RESPA dated October 30, 2019, Plaintiffs' bankruptcy counsel requested a copy of the alleged June 3, 2019 letter from the U.S. Department of Veterans' Affairs which had allegedly caused Plaintiffs' loan modification denial.

117.    A true and correct copy of the October 30, 2019 RFI is attached hereto as Exhibit 35.

118.    Plaintiffs' bankruptcy counsel sent the October 30, 2019 RFI to Mr. Portman of Dovenmuehle and to David Sulpizi, Loan Technician at the U.S. Department of Veterans' Affairs. *Id*. The October 30, 2019 RFI, and all correspondence sent by Plaintiffs' counsel under RESPA, were sent to the address designated by Dovenmuehle for receipt of RESPA requests and notices.

### i.    *Mr. McCants files Chapter 13 case to protect home from continued foreclosure efforts.*

119.    On October 30, 2019, Mr. McCants filed a petition under Chapter 13 of the Bankruptcy Code to avoid the November 5, 2019 foreclosure. *See* Ch. 13 Docket No. 1.

120.    A true and correct copy of Mr. McCants' Chapter 13 petition, together with an October 30, 2019 cover letter notifying foreclosure counsel of same, is attached hereto as Exhibit 36.

121.    Mr. McCants' Schedule B lists a cause of action against both Dovenmuehle and the Mackie Wolf law firm for wrongfully denying Plaintiffs' home loan modification application during the dual tracking period.

122.    A true and correct copy of Mr. McCants' Schedule B is attached hereto as Exhibit 37.

*j.* ***Dovenmuehle continues to assert it did not commit any errors under RESPA.***

123.     In a letter dated November 1, 2019 to Plaintiff's bankruptcy counsel, Dovenmuehle acknowledged receipt of "your inquiry regarding the above-referenced mortgage loan and have referred your inquiry to the appropriate area for review."

124.     A true and correct copy of November 1, 2019 letter from Dovenmuehle is attached hereto as <u>Exhibit</u> <u>38</u>.

125.     It is unclear which correspondence that this letter was acknowledging, but it is assumed that it acknowledged receipt of Plaintiff's October 30, 2019 RFI.

126.     In a letter to the McCants dated November 6, 2019, Dovenmuehle notified Plaintiffs of their right under the Equal Credit Opportunity Act to receive a copy of all written appraisals developed in connection with the McCants' loss mitigation application.

127.     A true and correct copy of the November 6, 2019 letter from Dovenmuehle is attached hereto as <u>Exhibit</u> <u>39</u>.

128.     The November 6, 2019 letter from Dovenmuehle advised the McCants that Dovenmuehle "may order an appraisal to determine the property's value as part of the loss mitigation process and charge you for this appraisal." *Id.*

129.     In a letter dated November 7, 2019 sent to Plaintiff's bankruptcy counsel, Dovenmuehle provided information on Plaintiff's rights and protections under the U.S. Department of Housing and Urban Development's Servicemembers Civil Relief Act.

130.     A true and correct copy of November 7, 2019 letter from Dovenmuehle is attached hereto as <u>Exhibit</u> <u>40</u>.

131.     In a letter dated November 11, 2019 to the McCants, Dovenmuehle acknowledged receipt of "your inquiry regarding the above-referenced mortgage loan and have referred your

inquiry to the appropriate area for review."

132.    A true and correct copy of November 11, 2019 letter from Dovenmuehle is attached hereto as <u>Exhibit 41</u>.

133.    It is unclear which correspondence that this letter was acknowledging, but it is assumed that it acknowledged receipt of Plaintiff's October 30, 2019 RFI.

134.    It does not appear that Dovenmuehle copied Plaintiff's bankruptcy counsel on its November 11, 2019 letter.

135.    Dovenmuehle responded to Plaintiff's October 30, 2019 RFI by letter dated November 14, 2019, in which Dovenmuehle stated that it had "fully investigated the issue" that "a denial letter was issued from the VA stating the reasons for the denial and that neither the borrowers nor Ms. Shank received a letter from the VA indicating that the loan modification was denied."

136.    A true and correct copy of November 14, 2019 letter from Dovenmuehle is attached hereto as <u>Exhibit 42</u>.

137.    In its November 14, 2019 letter, Dovenmuehle concluded that "no action on our part was required based on the following: The Department of Veterans [A]ffairs does not generate or mail out approvals or denials of said applications directly to the lender/servicer of the loan." *Id*. Dovenmuehle further explained that, in the instance of the McCants, "we submitted the loan modification application to the VA for review and they responded with a denial of the application to us in electronic mail format stating: 'Your request…to modify the loan is denied. The borrower does not show affordability for the proposed modification.' We then communicated the VA's decision to Mr. and Ms. McCants via a denial letter dated June 3, 2019." *Id*. The letter further stated, "Enclosed is a copy of the denial letter that was issued in

response to the VA's recommendation." However, the alleged June 3, 2019 letter was not enclosed with the November 14, 2019 letter.

138.    Dovenmuehle has refused to provide a copy of the alleged communication from the VA denying Plaintiffs' loss mitigation application in response to Plaintiffs' October 30, 2019 RFI. Over a year has passed since Plaintiffs first requested this documentation through valid RESPA correspondence, Dovenmuehle has still not produced the alleged VA communication.

### k.   Defendants violated RESPA's dual-tracking prohibition and damaged Plaintiffs.

139.    The Plaintiffs allege that the Defendants violated Section 12 CFR 1024.41(f)(2)(i) of Regulation X, which provides that the Defendants cannot file for any judicial or non-judicial foreclosure if the borrower has submitted a complete loss mitigation application before the foreclosure is filed.

140.    The Plaintiffs have been damaged by the actions of Defendants and are entitled to actual and statutory damages, costs and legal fees.

141.    Defendants' actions forced Plaintiffs to file a Chapter 7 case to stop the unlawful foreclosure process, and Defendants damaged Plaintiffs further by resuming their foreclosure efforts after Plaintiffs had received their discharge. Mr. McCants was forced to file a subsequent Chapter 13 bankruptcy case to save his home. This Chapter 13 added extra, unnecessary expenses, as the Western District of Texas requires Chapter 13 debtors to make plan payments through the Chapter 13 Trustee (known as a conduit plan), which increases the expense of the Chapter 13 proceeding.

142.    Specifically, under Mr. McCants' Chapter 13 plan, he is required to pay $1,925.00 per month on his regular monthly mortgage and arrearage, which is dramatically more than the $1,123.44 monthly mortgage payment he was paying in 2018. Mr. McCants must pay

this much larger amount to accommodate (a) the ten percent (10%) commission payable to the Chapter 13 Trustee under the conduit plan, plus the contractual interest of two and one quarter percent (2.25%), for a total of twelve and one quarter percent (12.25%) on the arrearage and regular monthly mortgage payments, (b) payment of the arrearage amount over a three-year plan period (as opposed to the standard five-year plan) imposed by the Bankruptcy Court.

143.    To cover the extra cost of his mortgage, Mr. McCants had to take a job doing over-the-road trucking in Texas. This job exacerbates his already-precarious heart condition because it requires that he sit for long periods of time in a prone position. This prolonged sitting is also painful on his joints.  Mr. McCants is unable to medicate these conditions fully because it might impair his driving. In addition, the job places Mr. McCants at greater risk for contracting COVID-19.  Because of his underlying heart condition, Mr. McCants is already in the high-risk group that is more susceptible to severe form of COVID-19. Mr. McCants has already contracted pneumonia in the course of his employment.

144.    In addition, and equally damaging, is that Mr. McCants will lose his social security disability payments if he continues to work through June of 2021 under the terms of his benefits program—the Promoting Opportunity Demonstration or "POD" program through the Social Security Administration—which suspends benefits if his income from gainful activity exceeds the amount of benefits over a certain time period.  Therefore, Mr. McCants is stuck between the competing incentives of working and not working, and Mr. McCants is in danger of losing an important benefit if he has to keep working to fund his Chapter 13 plan.  And because of Mr. McCants' health issues, it is not certain that he will be able to work in the future.

145.    Mr. McCants has served his country.  He should not be risking his health trying to save his house from a foreclosure-hungry servicer who has disregarded important RESPA

safeguards in an attempt to take the home of a veteran.

146.     Ms. McCants has also suffered from Defendants' actions.  She already suffers from high blood pressure, but her doctor now wants to increase her medication to deal with the additional stress caused by Defendants' actions.  As a veteran's wife, she too has served her country, and should not have to suffer Defendants' continued unlawful efforts to take her home.

147.     The Plaintiffs therefore seek to recover their damages in the form of actual and statutory damages, costs and legal fees.

## CLAIMS FOR RELIEF

## COUNT I
## (VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT)

148.     Plaintiffs incorporate herein by reference all preceding paragraphs as if fully set forth herein.

149.     Section 12 CFR 1024.41(f)(2)(i) of Regulation X provides that the Defendant Dovenmuehle cannot file for any judicial or non-judicial foreclosure if the borrower has submitted a complete loss mitigation application before a foreclosure is filed.

150.      This prohibition on the filing of such a foreclosure proceeding applies whether the completed loss mitigation application was filed by the borrower during the first 120 days that the borrower was delinquent or at any time after the first 120 days but before a foreclosure proceeding is filed.  12 CFR Section 1024.41(f)(2)(i).

151.     This absolute prohibition applies until the servicer has denied the application, the time to appeal the denial has expired, or the borrower has appealed the denial and no final decision has been made with respect to the appeal.  12 CFR 1024.41(f)(2)(i).

152.     Because Plaintiffs had submitted a complete loss mitigation application, Defendants were prohibited from proceeding with foreclosure until Defendants had denied the

application.

153.     Because Defendant Dovenmuehle made no loss mitigation offer to Plaintiffs, the Plaintiffs neither rejected the offer nor failed to comply or otherwise perform the terms of the agreement as provided for by 12 CFR 1024.41(f)(2)(iii).

154.     Plaintiffs allege that the conduct of the Defendant Dovenmuehle in this case constitutes a willful violation of the applicable provisions of Regulation X.

155.     Because Dovenmuehle's conduct described herein was performed as servicer and thus agent for and on behalf of Village Capital in connection with the Property, Village Capital is also liable for Dovenmuehle's actions.

156.     As a result of this violation by the Defendants, Defendants are liable to Plaintiffs for actual damages, statutory damages, costs and attorneys' fees under 12 U.S.C.§ 2506(f).

<u>COUNT II</u>
**(VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT)**

157.     The allegations in this complaint are re-alleged and incorporated herein by reference.

158.     Plaintiffs are consumers for purposes of the Texas Debt Collection Act ("TDCA") (Tex. Fin. Code Ann. 391.001 et seq.)

159.     Dovenmuehle is a debt collector for purposes of the TDCA. Village Capital is a debt collector for the purposes of the TDCA. In addition, because Dovenmuehle's conduct described herein was performed as servicer and thus agent for and on behalf of Village Capital in connection with the Property, Village Capital is also liable for Dovenmuehle's actions.

160.     Defendants have violated the Texas Debt Collection Act §392.301(a)(8) by threatening to take an action prohibited by law.

161.     Plaintiffs have incurred economic damages, as set forth herein, as a result of

Dovenmuehle's TDCA violation.

162.    Pursuant to the Texas Debt Collection Act, Plaintiffs are entitled to recover economic and non-economic damages, as well as exemplary damages and reasonable attorneys' fees for Dovenmuehle's malicious, egregious and willful TDCA violation.

## ATTORNEYS' FEES

163.    Plaintiffs incorporate herein by reference all preceding paragraphs as if fully set forth herein.

164.    Through the conduct described herein, Defendants have inflicted actual damages upon Plaintiff by taking steps to foreclose on Plaintiffs' property prior to declining their loss mitigation application, forcing Plaintiffs into two bankruptcy cases to avoid same.

165.    The Court can award Plaintiffs' attorneys' fees against Defendants pursuant to 12 U.S.C. §2605(f)(3) (RESPA) and § 392.403 of the TDCA.

## DEMAND FOR JURY TRIAL

166.    Plaintiffs assert their right under the Seventh Amendment to the United States Constitution and demand, in accordance with Fed. R. Civ. P. 38, a jury trial on their claims against Defendants.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray that this Court enter its order granting judgment for the following:

A.    For actual damages, costs and reasonable attorney fees;

B.    For statutory damages provided by RESPA;

C.    For exemplary and/or punitive damages under the TDCA; and

D.    Such other relief to which the Plaintiffs and their bankruptcy estate may be entitled.

Dated this 8th day of February, 2021.

Erin B. Shank P.C.

*/s/ Erin B. Shank*
Erin B. Shank
State Bar No 01572900
1902 Austin Avenue
Waco, Texas 76701
Tel: (254) 296-1161
Fax: (254) 296-1165
Erinbakershank@aol.com

and

KELLETT & BARTHOLOW PLLC

Karen L. Kellett
(*Pro Hac Vice Forthcoming*)
State Bar No. 11199520
Theodore O. Bartholow, III ("Thad")
(*Pro Hac Vice Forthcoming*)
State Bar No. 24062602
Claude D. Smith
State Bar No. 24028778
11300 N. Central Expressway, Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001
karen@kblawtx.com