**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **DANIEL EUGENE MCCANTS, SR. AND TRACY KNOX MCCANTS,** | § | |
| | § | |
| **PLAINTIFFS,** | § | **Case No. 6:21-cv-00129-ADA-JCM** |
| **vs.** | § | |
| | § | |
| **DOVENMUEHLE MORTGAGE, INC., and VILLAGE CAPITAL & INVESTMENT LLC,** | § | |
| | § | |
| **DEFENDANTS** | § | |

**JOINT FEDERAL RULE OF CIVIL PROCEDURE 26 REPORT**

1. What are the causes of action, defenses, and counterclaims in this case? What are the elements of the cause(s) of action, defenses, and counterclaims pled?

Plaintiffs:

This case is about a home mortgage servicer (Dovenmuehle Mortgage, Inc.) and a lender (Village Capital & Investment, LLC) that were so anxious to foreclose on the homestead of a fully-disabled, 22-year veteran of the United States Army that they posted his home for foreclosure while his complete home modification application was still pending. This is a clear violation of the "dual-tracking" prohibitions set forth in Regulation X ("Reg X"), the regulation which implements the Real Estate Procedures Act ("RESPA").

Specifically, section 12 CFR 1024.41(f)(2)(i) of Reg X prohibits a servicer from making the "first notice or filing required by appliable law for any judicial or non-judicial foreclosure procedure" if the borrower has submitted a complete loss mitigation application (*i.e.* loan modification application) before the servicer makes the first notice or filing, when the servicer has not yet sent the borrower a written notice pursuant to 12 CFR 1024.41(c)(1)(ii) denying the application.[1] In this case, Dovenmuehle, in an effort to make the May 2019 foreclosure date, filed a notice of foreclosure sale exactly twenty-one (21) days before the scheduled sale, before it had completed its evaluation of the McCants' complete loss mitigation application and provided the required notice to the McCants.

[1] This prohibition on the filing of such a foreclosure proceeding also applies if the completed loss mitigation application was submitted by the borrower during the first 120 days that the borrower was delinquent (12 CFR Section 1024.41(f)(2)(i)), and it applies until the servicer has denied the application, the time to appeal the denial has expired, or the borrower has appealed the denial and no final decision has been made with respect to the appeal. 12 CFR 1024.41(f)(2)(i).

Indeed, the McCants' application had been pending since February and supplemented on multiple occasions in March of 2019, but Dovenmuehle was so intent on foreclosure that it disregarded applicable law and regulation and pressed forward with the sale. Because of this violation of Reg X, Defendants are liable to the McCants for actual damages, statutory damages, costs and attorneys' fees under 12 U.S.C.§ 2506(f)(RESPA).

The McCants also sue on the same facts pursuant to the Texas Debt Collection Act ("TDCA") Tex. Fin. Code Ann. 391.001 *et seq*. Defendants violated TDCA §392.301(a)(8) by "threatening to take an action prohibited by law," which was to post the McCants' homestead for foreclosure when they were prohibited from doing so under Reg X and RESPA.[2]

Defendants:

Plaintiffs' claims are now, essentially, moot. First, no foreclosure sale has occurred, and, thus there can be no damages under RESPA. Second, a modification of the loan has been completed.

Plaintiffs claim that Defendants violated RESPA §§1024.41(f)(2)(i) and 1024.41(f)(2)(iii). Defendants deny these allegations, but even if they were true, it does not follow that Plaintiffs are entitled to relief. This is because under RESPA there must be an actual foreclosure sale in order to trigger actual damages. RESPA violations, including those alleging dual tracking, are actionable only with "actual damages to the borrower." 12 U.S.C. § 2605(f)(1)(A). If Plaintiffs' goal was to avoid foreclosure and modify their loan, which is what the complaint asserts, then that goal has been accomplished. Importantly, this means that Defendants have not suffered any actual damages. It follows that they are not entitled to any relief under RESPA.

As to the TDCA claim, the TDCA expressly allows threats of non-judicial foreclosure. Plaintiffs admit that they were in default and it follows that Defendants were permitted to seek foreclosure. Further, an alleged RESPA violation cannot form the basis for a TDCA claim.

2. Are there any outstanding jurisdictional issues? For removed cases based on diversity jurisdiction:

There are no outstanding jurisdictional issues.

a. Do the parties agree that the amount in controversy exceeded $75,000 at the time of removal? If not, each party should state its position on the amount in controversy.

This matter was not removed.

---

[2] Plaintiffs assert that Dovenmuehle and Village Capital are each a debt collector for the purposes of the TDCA. In addition, because Dovenmuehle's conduct in violation of the TDCA was performed as servicer and thus agent for and on behalf of Village Capital in connection with the Property, Village Capital is also liable for Dovenmuehle's actions.

b. If any party is a partnership or limited liability company, have the parties confirmed the citizenship of all partners/members in determining whether diversity exists?

The parties have confirmed the diversity jurisdiction based on citizenship.

3. Are there any unserved parties? If more than 90 days have passed since the filing of the Complaint or petition, should these unserved parties be dismissed?

There are no unserved parties.

4. Are there any agreements or stipulations that can be made about any facts in this case or any element in the cause(s) of action?

None at this time.

5. Are there any legal issues in this case that can be narrowed by agreement or by motion?

None at this time. However, Defendants have filed a Motion to Dismiss at ECF 13. Plaintiffs intend to respond to this Motion or amend their Complaint, as appropriate.

6. Are there any issues about preservation of discoverable information?

None at this time. Plaintiffs have delivered or will deliver correspondence to Defendants, through counsel, regarding the preservation of electronic information in connection with this litigation.

7. Are there any issues about disclosure or discovery of electronically stored information? In what forms should electronically-stored information be produced and will production include metadata?

Plaintiffs request that electronically-stored information be produced in its native format. If production in native format is not possible or is impractical, Plaintiffs would request that the information be produced as screenshots and/or in .pdf format.

The Parties agree and consent to service by e-mail of all pleadings and other papers in this case, including discovery.

8. What are the subjects on which discovery may be needed?

Plaintiffs will seek discovery on a number of topics, including but not limited to Defendants' records regarding Plaintiffs, including any electronically stored information, and Defendants' policies and procedures governing actions Defendants took or should have

taken, which are relevant to this lawsuit, and pattern and practice evidence. Plaintiffs will also seek depositions of Defendants and employees of Defendants.

Defendants assert that they will seek discovery as to the following topics:

Defendants will seek to depose Plaintiffs regarding the allegations contained in their complaint, specifically their communications and interactions with Defendants. Defendants also intend to request documents related to parties' communications and Plaintiffs' alleged damages.

9. Have initial disclosures been made? If not, should any changes be made in the timing, form, or requirement for initial disclosures?

Plaintiffs:

Plaintiffs have not made their Initial Disclosures. Defendants made Initial Disclosures on January 4, 2022, but Plaintiffs assert these disclosures were made prematurely per Fed. R. Civ. P. 26(a)(1)(C), because the parties had not had their Rule 26(f) conference as of that date. Plaintiffs assert that the form of disclosures made by Defendants were deficient, in that they failed to comply with the required disclosures under Fed. R. Civ. Pro. 26(a)(1)(A)(i) and (ii). Specifically, Plaintiffs allege that Defendants failed to provide the address and telephone number of each individual likely to have discoverable information, along with the subjects of the information that the disclosing party may use to support its claims or defenses. In addition, Plaintiffs assert that Defendants' descriptions of the documents in its possession which they may use to support their claims or defenses are deficient, in that they do not provide sufficient detail for Plaintiffs to make an informed decision concerning which documents they might need to examine, at least initially, or allow Plaintiffs to frame their documents requests in a manner likely to avoid future discovery disputes resulting from the wording of those requests. *See* Fed. R. Civ. P. 26 Advisory Committee Notes, 1993 Amendment.

The parties have discussed the deadline for the parties to make their initial disclosures, and they have included this deadline in the proposed scheduling order that the parties submit in connection with this Joint Report. Other than the deficiencies in the Defendants' Initial Disclosures referenced herein, the Parties do not believe any change in form or requirement for initial disclosures is needed at this time, except as to the following requirements:

> The Parties should name actual people, not "corporate representative" or "custodian of records" for the Rule 26(a)(1)(A) disclosures. *Bibolotti v. American Home Mortgage Servicing, Inc.*, 2013 WL 2147949, at * 5-6 (E.D. Tex. May 15, 2013). In addition, the Parties should provide the actual address of the witness, as required by Rule 26(a)(1)(A) - not the address of the law firm representing a Party.

Defendants:

As stated above, Plaintiffs have not made their Initial Disclosures and Defendants did so on January 4, 2022. The same Advisory Committee Notes cited by Plaintiffs stated that the goal of initial disclosures is to "accelerate the exchange of basic information about the case

and to eliminate paperwork involved in requesting such information." Rule 26 Advisory Committee Notes; *Fitz, Inc. v. Ralph Wilson Plastics Co*., 174 F.R.D. 587, 589 (D.N.J. 1997). The initial disclosure requirement should be applied "with common sense . . . keeping in mind the salutary purposes that the rule is intended to accomplish." *Id*. "[T]he self-executing disclosures are merely a starting point for the discovery process. *United States ex rel. Hunt v. Merck-Medco Managed Care, LLC*, 223 F.R.D. 330, 333 (E.D. Pa. 2004). "Although one of the purposes of Rule 26(a) is to 'help focus the discovery that is needed, the size of self-executing initial disclosure statements necessarily depends on the type of case involved." *Id*. (internal citations omitted). Plaintiffs' discovery protestations are premature since this litigation is still in its infancy and a motion to dismiss is pending.

10. What, if any, discovery has been completed? What discovery remains to be done and when should it be completed? Have the parties considered conducting discovery in phases or agreeing to limit discovery?

No discovery has been completed in this case, other Defendants' Initial Disclosures, which Plaintiffs allege are deficient. The parties have included a discovery deadline in their proposed scheduling order submitted to the Court in connection with this Rule 26 Report. The parties do not believe that discussing discovery in phases or otherwise limiting discovery is appropriate at this time.

11. What, if any, discovery disputes exist?

As stated in item 9 above, Plaintiffs assert that Defendants' Initial Disclosures were improper and deficient. Plaintiffs reserve the right to seek an order from the Court compelling Defendants to correct the alleged deficiencies in their Initial Disclosures.

12. Have the parties discussed the desirability of filing a proposed order pursuant to Federal Rule of Evidence 502?

The Parties have discussed this matter and have decided that no such order is required at this time.

13. Have the parties discussed early mediation?

The parties had already engaged in mediation. The parties were not able to settle at mediation.

14. Have the parties considered seeking entry of a confidentiality and protective order and are there any other scheduling or discovery items requiring the court's attention?

The parties have agreed to circulate a form of protective order. Plaintiffs assert that there may be a need for the Court to address the issues raised by Plaintiffs as to Defendants' Initial Disclosures, as alleged herein.

By:*/s/ Claude D. Smith*
Karen L. Kellett
State Bar No. 11199520
Claude D. Smith
State Bar No. 24028778
claude@kblawtx.com
11300 N. Central Expressway, Suite 301
Dallas, TX 75243
Tel.: (214) 696-9000
Fax: (214) 696-9001

and

Erin B. Shank
State Bar No 01572900
shankcourtnoticesonly@gmail.com
1902 Austin Avenue
Waco, Texas 76701
Tel: (254) 296-1161
Fax: (254) 296-1165

*Counsel for Plaintiffs*

and

*/s/ Mark D. Cronenwett*
MARK D. CRONENWETT
Texas Bar No. 00787303
mcronenwett@mwzmlaw.com

MACKIE WOLF ZIENTZ & MANN, P.C.
14160 North Dallas Parkway, Suite 900
Dallas, TX 75254
(214) 635-2650
(214) 635-2686 (Fax)

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned certifies that on January 20, 2022, a true and correct copy of the foregoing document was delivered via ECF Notification to counsel for Defendants.

*/s/ Claude D. Smith*
Claude D. Smith