**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **DANIEL EUGENE MCCANTS, SR.** | § | |
| **AND TRACY KNOX MCCANTS,** | § | |
| | § | |
| **PLAINTIFFS** | § | **CASE NO. 6:21-cv-00129-ADA- DTG** |
| **vs.** | § | |
| | § | |
| **DOVENMUEHLE MORTGAGE, INC.,** | § | |
| **and VILLAGE CAPITAL &** | § | |
| **INVESTMENT LLC,** | § | **JURY DEMANDED** |
| | § | |
| **DEFENDANTS** | § | |
| _____ | § | |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

TO THE HONORABLE JUDGE:

Daniel Eugene McCants Sr. and Tracy Knox McCants, ("Plaintiffs"), file this Second Amended Complaint against Dovenmuehle Mortgage, Inc. ("Dovenmuehle") and Village Capital & Investment LLC ("Village Capital," and with Dovenmuehle collectively the "Defendants") seeking damages and other relief from the Court for Defendants' violations of the Real Estate Settlement Procedures Act and other statutory and common law causes of action related to the servicing of Plaintiffs' mortgage loan.

### I.   INTRODUCTION

1.      Plaintiff Daniel McCants is a veteran of the United States Army who served our country for 22 years.   He has been classified as 100% disabled by the U.S. Veteran's Administration.   He became disabled as a result of a heart attack while on deployment.

2.      In 2016, Plaintiffs purchased a permanent residence in Killeen, Texas.

3.      Starting in 2017, the McCants suffered a series of personal and financial setbacks, resulting primarily from helping two of their children pay their student loans, as well as the loss

of their oldest daughter, who passed away giving birth to the McCants' grandchild, leaving medical bills and funeral costs which the McCants paid.  Based on these increasing burdens, the McCants fell behind on their mortgage obligations in late 2018.

4.      Plaintiffs sought modification of their home loan in February of 2019.  Plaintiffs submitted a complete loss mitigation application to their former mortgage servicer, Dovenmuehle, on February 26, 2019. Dovenmuehle requested additional documentation, which Plaintiffs provided in duplicate, providing every document requested for the specified time period.

5.      Notwithstanding the fact that Plaintiffs had submitted a complete application, Dovenmuehle referred Plaintiffs' loan account to its foreclosure attorneys, who promptly posted Plaintiffs' home for foreclosure in May of 2019—*before* Dovenmuehle had declined Plaintiffs' modification application. This was in clear violation of 12 C.F.R. § 1024.41 of Regulation X ("Reg. X"), the implementing regulation for the Real Estate Settlement Procedures Act ("RESPA"), which prohibits "dual-tracking," that is, the illegal practice of considering modification applications while simultaneously proceeding towards foreclosure.

6.      Dovenmuehle refused to cease its foreclosure efforts, which forced Plaintiffs to file a Chapter 7 bankruptcy case.  After Plaintiffs received their Chapter 7 discharge, Dovenmuehle again pursued foreclosure, forcing Mr. McCants to file a subsequent Chapter 13 bankruptcy case. In his Chapter 13 case, Mr. McCants had to pay additional fees and Chapter 13 Trustee commissions.  Mr. McCants has also been required to obtain a job to cover the additional expenses of the Chapter 13 bankruptcy case resulting from Dovenmuehle's violation of RESPA.  This has put Mr. McCants' health at risk. In addition, Mr. McCants is in the process of losing a valuable disability benefit as he continues to work.

7.      This is an action for actual and statutory damages filed by Plaintiffs for violations

of the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA") and of the Regulations enacted pursuant thereto by the Consumer Financial Protection Bureau ("CFPB").

8.      This action is specifically filed to enforce the regulations that became effective on January 10, 2014, specifically 12 CFR Section 1024.41 of Regulation X.[1]

9.      The Plaintiffs have a private right of action under RESPA, 12 USC § 2605(f) for these violations and such an action includes actual damages, costs, statutory damages and attorneys' fees. An action seeking relief under section 2605 may be brought in federal or state court. 12 U.S.C. § 2614.

10.     The residential mortgage loan in this case is a "federally related mortgage loan" as that term is defined by Regulation 1024.2(b) of Regulation X.

11.     Because Dovenmuehle was the servicer of Plaintiffs' loan at relevant times stated herein, it was the agent for Village Capital, who was the owner of Plaintiffs' loan.  Accordingly, Village Capital is liable for the actions of Dovenmuehle. Village Capital is also individually liable to extent it participated in the servicing of Plaintiffs' loss mitigation application.

12.     Dovenmuehle is subject to Regulations and does not qualify for any of the exceptions noted in the said Regulations for "small servicers."  Neither is Defendant a "qualified lender," as defined in 12 CFR 617.7000.

13.     In connection with Defendants' dual-tracking activities in 2019, Plaintiffs also sue under the Texas Debt Collection Act ("TDCA")(Tex. Fin. Code Ann. 391.001 *et seq.*), in threatening to take an action prohibited by law.  Plaintiffs also assert claims under RESPA for

---

[1] In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).  Specifically, on January 17, 2013, the CFPB issued the Real Estate Settlement Procedures Act (Regulation X) and the Truth in Lending Act (Regulation Z) Mortgage Servicing Final Rules, 78 FR 10901 (Regulation Z)(February 14, 2013) and 78 FR 10695 (Regulation X)(February 14, 2013).  These Regulations became effective on January 10, 2014.

Defendants' failure to conduct a reasonable investigation and produce documents in response to Plaintiffs' qualified written requests under sections 1024.35 and 1024.35 of Reg. X, which is actionable under RESPA.

14.     Defendants' bad acts and actionable behavior did not cease when Plaintiffs filed the captioned lawsuit.  At Plaintiffs' request, the parties sought a stay of litigation to allow the parties to engage in mediation.  Defendants knew Plaintiffs wanted and needed a modification as part of any settlement of this lawsuit.

15.     Prior to the mediation, Plaintiffs submitted two additional loss mitigation applications, but Defendants mishandled both applications in violation of RESPA and other laws and regulations.

16.     As described more fully herein, Defendants improperly denied the first post-Complaint application (submitted May 7, 2021) on the false premise that the application was not complete, when in fact Plaintiffs had timely provided all requested documents, in some instances in response to duplicate requests for documents already provided.  Defendants failed to evaluate Plaintiffs' subsequent application (submitted July 20, 2021) within thirty days of declaring the application complete, as required under 12 C.F.R. § 1024.41(c)(1)—a violation which Dovenmuehle later admitted.  In fact, Dovenmuehle did not provide a written response until nearly five months later, on December 8, 2021.

17.     After months of delay—in violation of the timelines set forth in RESPA—Defendants sent Plaintiffs a letter dated December 8, 2021 stating that "Your request for a modification has been approved."  The December 8, 2021 letter represented that the owner of the loan was Village Capital and included a proposed loan modification agreement with signature lines for Village Capital and Plaintiffs.  The letter further required that the modification had to be

"signed by all parties" and returned no later than December 23, 2021.  Relying on Defendants' representations, Plaintiffs signed the modification offer and submitted it to Dovenmuehle by the stated deadline.

18.     As of December 28, 2021, the date of the scheduled mediation, Defendants had not signed the modification agreement, but Defendants represented that Defendant Village Capital, as the stated owner of the loan, would sign the modification agreement and file it in the real property records by January 28, 2022.  Induced by this representation and in reliance on same, Mr. McCants dismissed his Chapter 13 case, so to avoid a double payment under the modification and his Chapter 13 plan, which were both due on January 1, 2022.[2]

19.     Village Capital countersigned the modification on January 5, 2022. However, shortly thereafter, Plaintiffs received a notice that their mortgage loan had been sold to a new owner effective as of December 1, 2021, a date which was *before* the December 8, 2021 modification offer and *before* the date the previous owner, Village Capital, counter-signed the modification.  Prior to this notice of sale, Defendants did not reveal that Defendant Village Capital had not owned the loan since December 1, 2021. Thus, when Defendant Village Capital signed the modification agreement on February 5, 2021, it had no capacity to modify a loan owned by another entity or bind the new owner to the modification.

20.     As such, the actual loan was not legally modified, and Plaintiffs were in technical default as of December 29, 2021, because Mr. McCants had not yet cured the entire pre-petition deficiency in his bankruptcy case.

21.     Despite repeated requests by Plaintiffs, both informally by direct requests to

---

[2] As his bankruptcy plan payments were more expensive than the "modified" monthly payment amount, it made sense to dismiss the bankruptcy case and address the deficiency through the lower-cost "modification."

Defendants' counsel and formally through written discovery requests, Defendants have failed to provide any evidence that the new owner is bound by the modification. Therefore, Plaintiffs remain at the whim of the new owner, who is not bound by the modification to which it is not a party.

22.     Defendants continued mishandling of Plaintiffs' subsequent loss mitigation applications has damaged Plaintiffs and unnecessarily prolonged the loss mitigation process. Plaintiffs' damages include increased costs and expenses relating to Mr. McCant's Chapter 13 bankruptcy case, prolonged credit damage, non-litigation attorneys' fees, costs and expenses relating to the multiple modification applications which should not have been necessary, and attorneys' fees and expenses relating to RESPA correspondence, in addition to other damages described herein.

23.     Plaintiffs therefore seek to recover actual damages for the RESPA violations committed by the Defendants in connection with the loss mitigation applications submitted by Plaintiffs after the filing of this case, as well as statutory damages for Defendants' pattern and practice of non-compliance with the requirements of RESPA. Plaintiffs also seek recovery from Defendants for their failure to comply with the requirements of RESPA's error resolution procedures for these additional violations. Plaintiffs further seek recovery of damages under the TDCA. In addition, Plaintiffs seek recovery of their damages as a result of Defendnats' fraud, negligent misrepresentation and fraud in a real estate transaction under Tex. Bus. & Com. Code Ann. § 27.01 *et seq*. Plaintiffs also seek exemplary damages under Tex. Prac. & Rem. Code § 44.003(a).

## II. JURISDICTION AND VENUE

24.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331 (Federal Question Jurisdiction).  The Court has jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 (Supplemental Jurisdiction).

25.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial portion of the events giving rise to Plaintiff's claims occurred in this district, and Plaintiffs' Chapter 7 and 13 bankruptcy cases were filed in this district. Defendants' wrongful acts were committed in this district, and Defendants regularly transacts business in this district.

### III.    PARTIES

26.    Plaintiffs, Daniel E. McCants, Sr. and Tracy K. McCants, are citizens and residents of Killeen, Texas.  Daniel E. McCants, Sr. was most recently a Debtor in Chapter 13 Bankruptcy Case number 19-60811 filed in the Western District of Texas, Waco Division, on October 30, 2019, which was voluntarily dismissed.   The Plaintiffs are hereinafter referred to as the "Plaintiffs."

27.    Defendant Dovenmuehle Mortgage, Inc. is a corporation organized under the laws of the State of Delaware with a principal office and mailing address of 1 Corporate Drive, Suite 360, Lake Zurich, Illinois, 60047.  Its registered agent in Texas is CT Corporation System at 1999 Bryan St., Suite 900, Dallas, Texas 75201-3136.

28.    Defendant Village Capital & Investment LLC is a corporation organized under the laws of the State of Delaware with a principal office and mailing address of 700 East Gate Drive, Suite 520, Mount Laurel, New Jersey, 08054. Its registered agent in Texas is National Registered Agents, Inc. at 1999 Bryant St., Suite 900, Dallas, Texas 75201-3136.

### IV. FACTUAL ALLEGATIONS

#### a.   *The Home Loan.*

29.    The McCants purchased their homestead, located at 6504 Tanzanite Drive, Killeen, Texas 76542 (the "Homestead Property") in 2016.

30.     In 2017, the McCants refinanced the existing loan on their Homestead Property so to obtain a more favorable interest rate.  The McCants refinanced through Village Capital & Investment, LLC.

31.     In connection with the refinance of their Homestead Property, Plaintiffs executed a note dated July 18, 2017 in favor of Village Capital & Investment, LLC in the amount of $278,535.00, with an initial annual interest of 2.250%, subject to periodic adjustment (the "Note"). Plaintiffs' mortgage loan was secured by the Homestead Property pursuant to a deed of trust executed by Plaintiffs on that same date (the "Deed of Trust").  The Note and Deed of Trust are referred to collectively as the "Loan" or the "Homestead Loan."

32.     True and correct copies of the Note and Deed of Trust are attached hereto as Exhibit 1.

33.     It is believed that Dovenmuehle was the current servicer of the Loan following the execution of the Note and Deed of Trust, for the time periods described herein.

### b. Mr. McCants is a disabled veteran of the United States Army.

34.     Mr. McCants is a veteran of the United States Army who served our country for 22 years.  He served on three deployments in the Middle East, including two in Iraq and one in Jordan. He has been diagnosed with anxiety-based posttraumatic stress disorder.  He also suffers with sleep apnea and insomnia.  He has arthritis in his hands, knees and hips, causing significant pain and limiting his flexibility and functionality.

35.     While on deployment, Mr. McCants suffered a heart attack in 2012.  It is believed that he had three prior heart attacks which went undiagnosed, because the doctors on duty during deployment were training doctors without the necessary expertise to recognize those cardiac events. After his major, confirmed heart attack in 2012, the doctors determined that he had at least

three prior heart attacks.

36.     In 2013, Mr. McCants received his medical discharge from the U.S. Army based on the foregoing conditions and other medical issues.  The U.S. Veteran's Administration has classified him as 100% disabled.

37.     As a result of Mr. McCants' classification as 100% disabled, he received monthly disability payments from the Veteran's Administration in the approximate amount of $3,300 each and monthly Social Security disability payments in the approximate amount of $1,690 each.[3]

38.     In 2017, the McCants' oldest child became pregnant and gave birth to a baby girl. The McCants' daughter then died three days later of a brain aneurism. In addition to the devastating emotional impact of their daughter's death, the McCants suffered financially as a result of the additional medical bills and funeral costs.  Even as of 2018, the McCants were still paying off their daughter's funeral expenses.  The Plaintiffs also assisted their younger two children in paying down their student loans.

39.     Based on these financial pressures, the McCants fell behind on their mortgage loan in late 2018.

### c.   *The McCants apply for a modification of their home loan.*

40.     Based on these events, Plaintiffs submitted a complete home loan modification application to Dovenmuehle (the "2019 Application") on February 26, 2019 through their bankruptcy counsel. This application was submitted under 12 CFR § 1024.41 of Reg. X.

41.     A true and correct copy of the 2019 Application is attached hereto as <u>Exhibit</u> <u>2</u>.

42.     Plaintiffs submitted the 2019 Application on the Loss Mitigation form sent to

---

[3] Mr. McCants' benefits have increased in amount over his years of eligibility, but the amounts listed above are for the year 2019, when Plaintiffs first made their loss mitigation application, as discussed herein.

Plaintiffs and their counsel by Dovenmuehle, and the application contained all the documents requested by Dovenmuehle on the form.

43.     Plaintiffs' counsel submitted the 2019 Application by facsimile and email, using the fax number and email address designated by Dovenmuehle on the Loss Mitigation application form.  *Id*.

44.     At the time Plaintiffs submitted their loss mitigation application to Dovenmuehle, Plaintiffs were due for no earlier than November 2018 and were therefore less than 120 days delinquent.

45.     On March 5, 2019, Dovenmuehle sent Plaintiffs a request for additional documents via email correspondence (the "March 5, 2019 Email").

46.     A true and correct copy of the March 5, 2019 Email from Dovenmuehle is attached hereto as Exhibit 3.[4]

47.     The March 5, 2019 Email does not contain a deadline for Plaintiffs to provide the documents requested in that email.  *Id*.

48.     Dovenmuehle also purports to have sent a letter dated March 5, 2019 to Plaintiffs (the "March 25, 2019 Letter").

49.     A true and correct copy of the March 5, 2019 Letter is attached hereto as Exhibit 4. The March 5, 2019 Letter expressly acknowledged receipt of Plaintiffs' February 26, 2019 loss mitigation application.

50.     The March 5, 2019 Letter was sent via regular mail.  *Id*.  The March 5, 2019 Letter

---

[4] Exhibit 3, which is a copy of the March 5, 2019 Email identified herein, contains the handwritten notations from the law office of Erin Shank, P.C., which assisted with the McCants' loss mitigation application.  Plaintiffs have propounded discovery requests on Defendants which ask for copies of all communications between the parties, including electronically stored communications, but Defendants have not yet produced any communications.

failed to copy Plaintiffs' counsel, despite the fact that the 2019 Application included a statement from Plaintiffs' counsel directing Dovenmuehle to make all communications regarding the loss mitigation application to be sent to her firm. *See* Exhibit 2.

51.    The March 5, 2019 Letter contains the following statement:

<u>Suspension of Foreclosure</u>: Foreclosure referral will not occur while a complete loss mitigate package is being reviewed or if we extend you an offer for a home retention workout option, and the applicable time period to accept such an offer has not expired.

Exhibit 4 at pg. 4.

52.     On that exact same day—March 5, 2019—Dovenmuehle referred the McCants to foreclosure and sent Plaintiffs a letter notifying them of same.

53.    A true and correct copy of the March 5, 2019 letter from Dovenmuehle referring the McCants' account to foreclosure counsel is attached hereto as <u>Exhibit 5</u>.

54.    In the March 5, 2019 referral letter, Dovenmuehle identified Mackie, Wolf, Zientz & Mann, P.C. as its foreclosure counsel and directed Plaintiffs to contact counsel if they wished to reinstate their mortgage. *Id*.

55.    On or about March 6, 2019, Darcy Wheeler of Ms. Shank's office contacted Maricela Rodriguez of Dovenmuehle—the Loss Mitigation Processor who sent the March 5, 2019 email—regarding the documents requested in said email.  Although Ms. Rodriguez was "on the other line," Ms. Wheeler spoke with a Dovenmuehle representative named "Brianna" regarding the documents list in the March 5, 2019 email, and she explained that it would be some time before Ms. Shank could coordinate with her clients to provide the documents requested in the email, because Ms. Shank's firm was then engaged in an unrelated, heavily-litigated matter.  Brianna added this to the notations and told Ms. Wheeler that Plaintiffs could provide the documents by

close of business on March 25, 2019.[5]

56.     On March 20, 2019, Dovenmuehle claims that it sent an additional request for documents directly to the McCants.

57.     The McCants, however, never received the March 20, 2019 letter and the McCants' bankruptcy counsel did not receive the March 20, 2019 letter. *See* attached Declarations of Daniel Eugene McCants Sr. and Erin B. Shank at composite Exhibit 6.

58.     The McCants' bankruptcy counsel was not copied on the March 20, 2019 Letter, despite prior instructions that all communications with the McCants be made through counsel. *See* Exhibit 2.

59.     The McCants and their bankruptcy counsel only became aware of the March 20, 2019 letter in May of 2020—well after Defendants violated the dual tracking prohibition under RESPA—when Dovenmuehle produced the letter in response to Plaintiffs' Notice of Error.

60.     A copy of the alleged March 20, 2019 letter is attached hereto as Exhibit 7.

61.     Dovenmuehle's March 20, 2019 request for additional documents did not contain any deadlines for Plaintiffs to provide the requested documents. In addition, it appears to be duplicative of the request for documents made by Dovenmuehle in the March 5, 2019 Email and the March 5, 2019 Letter. *See* Exhibits 3 and 4.

62.     On March 25, 2019, Plaintiffs, through their bankruptcy counsel, responded to Dovenmuehle's March 5, 2019 request for additional documents, including all written, oral and email requests from Dovenmuehle, by providing additional documents and a detailed explanation in support of the application.   In their response, Plaintiffs' counsel included the March 5, 2019

---

[5] On information and belief, the audio recordings of communications between Dovenmuehle and Erin Shank, P.C. (maintained by Dovenmuehle) will confirm that Dovenmuehle agreed to a March 25, 2019 deadline.  Plaintiffs have propounded discovery on Defendants which have requested production of the audio recordings at issue.

Email with handwritten notations indicating the documents provided.

63.     A true and correct copy of the March 25, 2019 letter from Plaintiffs' bankruptcy counsel is attached hereto as Exhibit 8.

64.     Plaintiffs' March 25, 2019 letter was a timely supplement to their initial application because Dovenmuehle had agreed to a March 25, 2019 deadline, as stated above.

65.     Plaintiffs' loss mitigation application was, at a minimum, facially complete as of March 25, 2019, because Plaintiffs provided all missing documents and information requested in the March 5, 2019 Email from Dovenmuehle at Exhibit 3 and the March 5, 2019 Letter at Exhibit 4, as described in 12 C.F.R. 1024.41(c)(2)(iv).[6]

66.     Because Plaintiffs submitted a complete loss mitigation application before Defendants posted their homestead for foreclosure, Defendants were obligated to treat the application as if it had been received forty-five days or more prior to any scheduled foreclosure proceeding.  *See* Official Comment to section 1024.41(b)(2)(i).

67.     Plaintiffs were unaware of the document request contained in the March 20, 2019, because they had never received this letter. However, these requests were duplicative of the March 5, 2019 letter.

68.     During this time, the McCants' counsel, Ms. Shank, was persistently pursing a modification on behalf of the McCants, and her paralegal was in constant contact with Dovenmuehle's loss mitigation department.   Counsel's paralegal contacted Dovenmuehle

---

[6] When an application is facially complete, the servicer must treat it as complete, even if the servicer later discovers that additional information or corrections to a previously submitted document are required to complete the application. 12 C.F.R. 1024.41(c)(2)(iv).  In that case, the servicer must promptly request the missing information or corrected documents and treat the application as complete for purposes of sections (f)(2) and (g)—the provisions prohibiting foreclosure—until the borrower is given a reasonable opportunity to complete the application.  If the application is completed during this period, the application shall be considered complete as of the date it first became facially complete.  12 C.F.R. 1024.41(c)(2)(iv).

approximately two times a week during this period.

69.     Also during this time, the McCants were assisting their counsel with the loss mitigation application.  In keeping with these efforts, the McCants would immediately notify their counsel of all correspondence from Dovenmuehle and would hand deliver all mail they received.

70.     On April 1, 2019, a paralegal from Plaintiffs' bankruptcy counsel's firm called Dovenmuehle to determine the status of the home loan modification application.  During this call, Dovenmuehle made an oral request for additional documents in support of Plaintiffs' modification application.

71.     In response to the oral request for additional documents in the April 1, 2019 call, Plaintiffs, through counsel, sent a letter to Dovenmuehle dated April 10, 2019 which contained all additional documents requested.

72.     A true and correct copy of the April 10, 2019 letter from Plaintiffs' counsel is attached hereto as Exhibit 9.

73.     Plaintiffs' counsel made multiple attempts to fax the April 10, 2019 letter to Dovenmuehle on April 11, 2019.  It appears that the faxes did not go through because no fax machine was detected (and therefore Dovenmuehle's fax line was not working).  In any event, Plaintiff's counsel successfully emailed the April 10, 2019 letter to Dovenmuehle's designated loss mitigation email address on April 11, 2019.  *See* April 11, 2019 email attached as last page of Exhibit 9.  Dovenmuehle subsequently acknowledged receipt of the additional documents provided in the April 10, 2019 letter.

74.     Again, Plaintiffs' loss mitigation application was complete, because Plaintiffs had submitted their original application and timely and completely responded to all requests for additional information as of March 25, 2019, notwithstanding any subsequent request by

Dovenmuehle for additional documents.  *See* footnote 6, *supra*.

      **d.  *Dovenmuehle posts for foreclosure before denying complete modification application.***

      75.     Despite the fact that Plaintiffs had submitted a complete loss mitigation application as of March 25, 2019 and submitted supplemental documentation by April 11, 2019, on April 15, 2019, Dovenmuehle's attorneys, Mackie, Wolf, Zientz & Mann, P.C., posted the McCants' Homestead Property for non-judicial foreclosure sale scheduled to occur on May 7, 2019 on the courthouse steps in Bell County, Texas by filing a Notice of Foreclosure Sale.[7]

      76.     A true and correct copy of the Notice of Foreclosure is attached hereto as <u>Exhibit 10</u>.

      77.     Two days later, in a letter dated April 17, 2019, Dovenmuehle denied Plaintiffs' home loan modification application on the false grounds that Dovenmuehle had not timely received all of the additional documents it had requested.

      78.     A true and correct copy of the April 17, 2019 letter from Dovenmuehle is attached hereto as <u>Exhibit</u> <u>11</u>.

      79.     Again, Dovenmuehle sent the April 17, 2019 denial letter directly to the McCants, and not their counsel, despite prior instructions that all communications with the McCants be made through counsel.  *See* February 26, 2019 authorization letter from the McCants included in Exhibits 2, 8 and 9.

      80.     In its April 17, 2019 denial letter, Dovenmuehle lists out the documents it purportedly did not receive.  However, Plaintiffs, through the April 10, 2019 letter from bankruptcy counsel and previous correspondence, had already provided each of the documents

---

[7] Defendants, in a rush to foreclose on Plaintiffs' Homestead Property, filed the Notice of Foreclosure Sale exactly twenty-one days prior to the scheduled foreclosure sale, which is the exact minimum notice period provided under Texas law.

listed.  *See* Exhibit 2, 8 and 9.

81.     As argued in bankruptcy counsel's May 6, 2019 Notice of Error attached as Exhibit 16, *supra*, and discussed in more detail below, Plaintiffs had already provided the documentation requested by Dovenmuehle listed on its April 17, 2019 denial letter, notwithstanding the fact that Plaintiffs never received the March 20, 2019 letter: Plaintiffs submitted a Hardship Affidavit signed by both Plaintiffs (provided multiple times), the requested bank records, evidence of other bank accounts being closed, and pay stubs for Tracy McCants.

82.     Furthermore, Dovenmuehle's April 17, 2019 denial letter asserted that the McCants failed to provide certain updated documents, specifically, Tracy McCants' paystubs from "3/17-current" and February to March bank statements for a particular bank account.  This assertion is disingenuous, however, because (a) the McCants had already provided these documents for prior relevant time periods, including February and March 2019 paystubs for Mrs. McCants, as well as account information for the specified bank account for February 2019 and prior months, and (b) Dovenmuehle had not requested more recent statements for those items in any of its communications with Plaintiffs or their counsel, including the April 1, 2019 phone call with Plaintiffs' counsel.  Dovenmuehle therefore denied the application for alleged incompleteness based on documents that Dovenmuehle had never requested.  Comment 41(b)(2)(i)(B) of Supplement I to 12 C.F.R. §1024.41 requires a servicer to "promptly request" additional information or corrected documents from the borrower pursuant to the reasonable diligence requirements set forth in the Rule and Comments.

83.     To the extent that Dovenmuehle asserts that Plaintiffs had to re-date page 6 of the 2019 Application, Plaintiffs assert that it was an error under RESPA to request the borrowers change the date of their application, and in any event, this does not alter the fact that Plaintiffs

submitted a facially complete loss mitigation application by at least March 25, 2019.

   *e.* ***Plaintiffs protest dual tracking through RESPA correspondence.***

84.     On April 25, 2019, Plaintiffs' bankruptcy counsel sent a Notice of Error ("NOE") under 12 C.F.R. 1024.35 to Steven Wu, an attorney with Mackie, Wolf, Zientz & Mann, P.C. and Dovenmuehle stating that Plaintiffs had submitted a complete home loan modification application to Dovenmuehle and that their simultaneous attempt to foreclose on the McCants' home violated the "dual tracking" provisions of RESPA.

85.     A true and correct copy of the April 25, 2019 NOE is attached hereto as <u>Exhibit</u> <u>12</u>.

86.     On April 29, 2019, Dovenmuehle acknowledged receipt of that letter, again failing to copy Plaintiffs' counsel in that acknowledgement.

87.     A true and correct copy of the April 29, 2019 acknowledgement from Dovenmuehle is attached hereto as <u>Exhibit</u> <u>13</u>.

88.     The next day, April 30, 2019, Dovenmuehle wrote Mr. McCants a letter providing a list of possible options to avoid foreclosure, including modification, refinance and forbearance— even though he had already submitted a complete modification application.

89.     A true and correct copy of the April 30, 2019 letter from Dovenmuehle is attached hereto as <u>Exhibit</u> <u>14</u>.

90.     In late April or early May 2019, Plaintiffs' counsel called Steven Wu of Mackie, Wolf, Zientz & Mann, P.C. and explained that the McCants had submitted a home loan modification application to Dovenmuehle, and further inquired if Mackie, Wolf, Zientz & Mann, P.C. intended to go forward with the foreclosure.  Mr. Wu replied that Mackie, Wolf, Zientz & Mann, P.C. would indeed be going forward with the foreclosure on May 7, 2019, despite the modification application.

### f.   The Chapter 7 Bankruptcy Case and preservation of dual tracking claims.

91.   On May 3, 2019, Plaintiffs filed their Chapter 7 bankruptcy petition in the United States Bankruptcy Court for the Western District of Texas, Waco Division, under Case No. 19-60314, to avoid the foreclosure scheduled for May 7, 2019.  Ch. 7 Docket No. 1.[8]  Plaintiffs' bankruptcy counsel sent a letter to Mr. Steven Wu of Mackie, Wolf, Zientz & Mann, P.C. dated May 3, 2019, informing him of the bankruptcy filing and providing a copy of the notice of same.

92.   A true and correct copy of the May 3, 2019 letter from Plaintiffs' bankruptcy counsel to Steven Wu is attached hereto as Exhibit 15.

93.   Plaintiffs disclosed on their Schedule B (Personal Property) and Schedule C (Exempt Property) the existence of a cause of action against Dovenmuehle and/or Village Capital & Investment, LLC for violations of RESPA.  Ch. 7 Docket No. 1.

### g.   Additional RESPA correspondence.

94.   In a NOE dated May 6, 2019, Plaintiffs' bankruptcy counsel responded to Dovenmuehle's April 17, 2019 denial letter, wherein counsel stated that Plaintiffs had already provided the requested documents seven days prior, on April 10, 2019.

95.   A true and correct copy of the May 6, 2019 NOE is attached hereto as Exhibit 16.

96.   In the May 6, 2019 NOE, Plaintiffs' bankruptcy counsel further stated that it was error for Dovenmuehle to schedule a foreclosure sale of the McCants home by notice posted on April 15, 2019 while an application was still pending, in violation of the "dual tracking" prohibitions of 12 C.F.R. § 1024.41(f).  Counsel also stated that Mr. Wu's representation that Mackie, Wolf, Zientz & Mann, P.C. intended to go forward with the foreclosure despite the

---

[8] References to the Docket and filings in Plaintiffs' Chapter 7 bankruptcy case are herein referred to as "Ch. 7 Docket No." References to the docket and filings in Mr. McCants' subsequent Chapter 13 bankruptcy case are herein referred to as "Ch. 13 Docket No."

pending modification application also violated the dual tracking prohibitions under RESPA. Counsel asserted that it was error for Dovenmuehle to send the April 17, 2019 letter directly to the McCants, and not through counsel as directed. Finally, counsel expressed Plaintiffs' continuing desire to enter a home loan modification and attached much of the same documentation previously submitted.

97.    Shortly after the Chapter 7 bankruptcy filing, Mackie, Wolf, Zientz & Mann, P.C. sent Plaintiffs' bankruptcy counsel a letter dated May 8, 2019, inquiring as to whether the McCants were interested in pursuing "foreclosure prevention alternatives in relating to the bankruptcy filing," and directing the McCants to call Dovenmuehle to discuss options that may be available.

98.    A true and correct copy of the May 8, 2019 letter from Mackie, Wolf, Zientz & Mann, P.C. is attached hereto as Exhibit 17.

99.    The May 8, 2019 letter from Mackie, Wolf, Zientz & Mann, P.C. letter requested that Plaintiffs compile certain documentation prior to contacting Dovenmuehle. *Id*.

100.   In the letter to Plaintiffs' bankruptcy counsel dated May 8, 2019, Dovenmuehle stated that no RESPA violations had occurred in connection with Plaintiffs' account.

101.   A true and correct copy of the May 8, 2019 Dovenmuehle letter is attached hereto as Exhibit 18.

102.   In this letter, Dovenmuehle also claims that a "denial letter was issued on April 17, 2019 and mailed to the borrower to notify the borrower that no complete package had been sent and that we were proceeding with foreclosure." *Id*. Dovenmuehle's May 8, 2019 letter included a copy of its April 17, 2019 letter.

103.   Also during the Chapter 7 bankruptcy, Dovenmuehle sent Plaintiffs' bankruptcy counsel a letter dated May 13, 2019 stating that Mr. McCants might be eligible for protections

under the Serviceman's Relief Act.

104.    A true and correct copy of the May 13, 2019 letter from Dovenmuehle is attached hereto as Exhibit 19.

105.    In addition, Dovenmuehle sent Plaintiffs and their counsel an email and a letter both dated May 17, 2019 which each stated that the loan modification application was complete as of May 13, 2019.

106.    True and correct copies of the May 17, 2019 email and May 17, 2019 letter from Dovenmuehle are attached hereto as Exhibits 20 and 21, respectively.

107.     Dovenmuehle admitted that the application was complete, despite the fact that Plaintiffs had not submitted any new documentation to Dovenmuehle since April 11, 2019, which was prior to the bankruptcy filing and during the dual tracking period.

108.    Plaintiffs' bankruptcy counsel had submitted documents in connection with its May 3, 2019 NOE, but these documents were duplicative of documents previously sent to Dovenmuehle, and counsel's May 3, 2019 NOE was sent to correct Dovenmuehle's April 17, 2019 denial letter which incorrectly asserted that Plaintiffs had not yet submitted a complete application.

109.    Dovenmuehle thereafter sent an additional letter to the McCants dated June 3, 2019 which appeared to indicate that the McCants had been offered a home loan modification but had not timely responded to that offer. This statement is not correct.  Dovenmuehle had not offered the McCants a home loan modification.

110.    To the extent the June 3, 2019 letter from Dovenmuehle was a denial of the McCants' loss mitigation application, this letter failed to provide a specific reason for the denial, including the investor/owner requirement that formed the basis of the denial as required under Comment 41(d)(1) of Supplement I to section 1024.41.

111.     A true and correct copy of the June 3, 2019 letter from Dovenmuehle is attached hereto as Exhibit 22.

112.     In response, Plaintiffs' bankruptcy counsel sent a NOE to Dovenmuehle dated June 7, 2019 requesting copies of the alleged modification offer.

113.     A true and correct copy of the June 7, 2019 NOE is attached hereto as Exhibit 23.

114.     The NOE specifically stated that Plaintiffs did not receive a home loan modification offer and did not receive notice of the right to appeal.  *Id*.

115.     Dovenmuehle acknowledged receipt of Plaintiffs' June 7, 2019 NOE on both June 10, 2019 and June 12, 2019.

116.     True and correct copies of the June 10, 2019 and June 12, 2019 acknowledgements are attached hereto as Exhibits 24 and 25, respectively.

117.     Dovenmuehle sent the McCants a letter dated June 24, 2019 stating that their time to appeal their loss mitigation denial had expired.

118.     A true and correct copy of the June 24, 2019 letter from Dovenmuehle is attached hereto as Exhibit 26.

119.     Dovenmuehle responded to Plaintiffs' June 7, 2019 NOE by correspondence dated July 2, 2019, which stated Dovenmuehle's position that it had committed no error in the servicing of Plaintiffs' request for a home loan modification. Exhibit 27.

120.     Plaintiffs' bankruptcy counsel sent Dovenmuehle an additional NOE dated July 5, 2019.

121.     A true and correct copy of the July 5, 2019 NOE is attached hereto as Exhibit 28.

122.     In the July 5, 2019 NOE, bankruptcy counsel for the McCants stated that the June 24, 2019 letter from Dovenmuehle constituted an error under RESPA because, contrary to the

assertions in said letter, Dovenmuehle never offered or denied the McCants a loss mitigation modification on their home loan.  *Id.*  Because of this, Plaintiffs assert they never received any notice of appeal rights relating to an offer or denial of an offer.

123.    Dovenmuehle's "litigation attorney," Charles Portman, thereafter sent a letter to Plaintiffs' bankruptcy counsel dated July 9, 2019, stating that no errors had occurred in the servicing of Plaintiffs' request for a home loan modification.

124.    A true and correct copy of the July 9, 2019 letter from Mr. Portman is attached hereto as Exhibit 29.

125.    In his letter, Mr. Portman appeared to state that Plaintiffs were denied a home loan modification based on a letter from the U.S. Department of Veterans' Affairs dated June 3, 2019. *Id.* Mr. Portman further stated that Dovenmuehle had, in fact, not offered the McCants a home loan modification, and that the language stating "…" was form language that did not apply to Plaintiffs. *Id.* Mr. Portman apologized for the confusion caused by this form.  *Id.*

### h.   Plaintiffs receive their Chapter 7 Discharge, Dovenmuehle posts for foreclosure again.

126.    On August 1, 2019, Plaintiffs received a discharge in their Chapter 7 bankruptcy case.  *See* Ch. 7 Docket No. 17.

127.    A true and correct copy of the discharge order is attached hereto as Exhibit 30.

128.    Following their discharge, Plaintiffs immediately began to find a lender to refinance their home so they could get out from under the thumb of Dovenmuehle. Plaintiffs' efforts were not successful because Defendants forced Plaintiffs into bankruptcy by their illegal foreclosure efforts.

129.    Plaintiffs' bankruptcy counsel sent a letter dated August 7, 2019 to "Mary Ann," an employee in Dovenmuehle's Bankruptcy Department who had previously interacted with the

McCants' account, in which Plaintiffs' counsel pleaded for a home loan modification for this disabled veteran and his wife.

130.    A true and correct copy of the August 7, 2019 letter from Plaintiffs' bankruptcy counsel is attached hereto as Exhibit 31.

131.    Dovenmuehle responded to Plaintiffs' request for modification with another letter from Charles Portman, litigation attorney, dated August 13, 2019, which was essentially a word-for-word repeat of Mr. Portman's' July 9, 2019 letter stating that no error had occurred.

132.    A true and correct copy of the August 13, 2019 letter from Mr. Portman is attached hereto as Exhibit 32.

133.    On September 5, 2019, Dovenmuehle's attorneys, Mackie, Wolf, Zientz & Mann, P.C., again posted the McCants' Homestead Property for non-judicial foreclosure sale scheduled to occur on November 5, 2019 on the courthouse steps in Bell County, Texas by filing a Notice of Foreclosure Sale.

134.    A true and correct copy of the Notice of Foreclosure is attached hereto as Exhibit 33.

135.    When it became clear that Dovenmuehle was again pushing for foreclosure, Mr. McCants was forced to come out of retirement and take a job as an over-the-road truck driver. Although the McCants should have qualified for a modification without this additional income, Mr. McCants took this job in anticipation of filing a Chapter 13 case, to ensure that he could confirm a plan which would require him to repay the arrearage over the life of the plan, plus the regular monthly mortgage payments, and the other costs of a Chapter 13 case, including Chapter 13 Trustee fees and attorney fees.

136.    It should not have been necessary for Mr. McCants to take this job, but it became

necessary because of Defendants' refusal to evaluate his complete loss mitigation application in a timely or legally-required manner.

137.    Mr. McCants, a 100% disabled veteran, risked his health in taking this job, based on the fact that sitting for long periods of time has a negative effect on his heart health, and because the strain on his joints due to his arthritis.  And, increasingly, as the COVID-19 pandemic began its spread in early 2020, Mr. McCants was exposed to potentially life-threatening illness on a daily basis, especially given the fact that he is in a higher risk group.

138.    Indeed, Mr. McCants suffered pneumonia on two occasions during this time period, causing emergency room visits on July 30, 2019 and again in September of 2020.   The COVID-19 risk remains as Mr. McCants is still employed as a driver.

139.    In addition, Dovenmuehle's dual-tracking actions harmed Mr. McCants' credit.  In a time when he should have been building credit, his credit was damaged by Defendants forcing the McCants and Mr. McCants to file Chapter 7 and Chapter 13 cases to protect against Defendants' illegal attempts to foreclose.  Dovenmuehle's actions in damaging Mr. McCants' credit has caused him additional damages in the form of opportunity costs for Mr. McCants, because he did not have sufficient credit to start a trucking business, which he had hoped to do in late 2019.

140.    Defendants' illegal actions also had the cumulative effect of causing the McCants extreme emotional distress, as a result of the financial stress and additional stress of potentially losing their home.

141.    This stress and anxiety have manifested in Plaintiffs' health and relationships.  Mr. McCants' blood pressure has increased over the last three years as he has dealt with Dovenmuehle's illegal dual-tracking actions.  Mr. McCants' blood sugar levels are also erratic:

while his blood sugar was stable prior to dealing with Defendants, it now fluctuates to potentially dangerous levels, which has caused Mr. McCants to go to the doctor several times.  The blood sugar issue is made worse by Mr. McCants' work, which requires him to sit for long periods of time and limits his ability to maintain a balanced diet while on the road. Mr. McCants' ability to control his blood sugar is further limited by the fact that he is not allowed to take appropriate medicines when he is operating a vehicle.

142.    In addition, Mrs. McCants has also suffered significant hair-loss as a result of the anxiety caused by Defendants.  As a veteran's wife, she too has served her country, and should not have to suffer Defendants' continued unlawful efforts to take her home.

143.    Together, the McCants suffer from intimacy issues based on the anxiety and anger caused by Defendants.  The separation caused by Mr. McCants' job, which causes him to be out of the home multiple days each week, contributes to this strain.  The McCants' relationships with their children and grandchildren are also strained based on Mr. McCants' work schedule, as he is often not home, and the stress and exhaustion prevents him from having meaningful interactions with his family when he is home.

144.    These are real damages which arose because of Defendants' illegal tactic of dual-tracking.

145.    Meanwhile, Dovenmuehle sent the McCants a letter dated September 9, 2019 asking if they would like to apply for a home loan modification.

146.    A true and correct copy of the September 9, 2019 letter from Dovenmuehle is attached hereto as Exhibit 34.

147.    In a Request for Information ("RFI") under RESPA 12 C.F.R. 1024.36 dated October 30, 2019, Plaintiffs' bankruptcy counsel requested a copy of the alleged June 3, 2019

letter from the U.S. Department of Veterans' Affairs which had allegedly caused Plaintiffs' loan modification denial.

148.    A true and correct copy of the October 30, 2019 RFI is attached hereto as Exhibit 35.

149.    Plaintiffs' bankruptcy counsel sent the October 30, 2019 RFI to Mr. Portman of Dovenmuehle and to David Sulpizi, Loan Technician at the U.S. Department of Veterans' Affairs. *Id*. The October 30, 2019 RFI, and all correspondence sent by Plaintiffs' counsel under RESPA, were sent to the address designated by Dovenmuehle for receipt of RESPA requests and notices.

   *i.   Mr. McCants files Chapter 13 case to protect home from continued foreclosure efforts.*

150.    Also on October 30, 2019, Mr. McCants filed a petition under Chapter 13 of the Bankruptcy Code to avoid the November 5, 2019 foreclosure.  *See* Ch. 13 Docket No. 1.

151.    A true and correct copy of Mr. McCants' Chapter 13 Notice of Bankruptcy Case Filing, together with an October 30, 2019 cover letter notifying foreclosure counsel of same, is attached hereto as Exhibit 36.

152.    Mr. McCants' Schedule B lists a cause of action against both Dovenmuehle and the Mackie Wolf law firm for wrongfully denying Plaintiffs' home loan modification application during the dual tracking period.

153.    A true and correct copy of Mr. McCants' Schedule B is attached hereto as Exhibit 37.

154.    Mr. McCants' confirmed Chapter 13 Plan (as modified) required that Mr. McCants pay back the entire arrearage owed under the Homestead Loan over a thirty-nine-month period, while simultaneously paying the regular monthly mortgage payments.

155.    In addition, Mr. McCants was required to pay Chapter 13 Trustee fees equal to 10%

of all amounts distributed under the Plan, which greatly increased the financial burden on the McCants.

156.    These additional expenses were unnecessarily imposed on the McCants by Defendants, who pressed for an illegal foreclosure and otherwise failed to evaluate the McCants' complete home loan modification timely and appropriately. The Chapter 13 Case (and the Chapter 7 Case before it) also unnecessarily damaged Mr. McCants' credit.  The McCants should have had the opportunity to build their credit; instead, there has been no opportunity for them to improve their access to credit, as Defendants failed and refused to evaluate their timely loss mitigation application properly.  Not only did the McCants lose their ability to refinance the Homestead Loan through a third party, but they also lost access to credit markets.

**j.    *Dovenmuehle continues to assert it did not commit any errors under RESPA.***

157.    In a letter dated November 1, 2019 to Plaintiff's bankruptcy counsel, Dovenmuehle acknowledged receipt of "your inquiry regarding the above-referenced mortgage loan and have referred your inquiry to the appropriate area for review."

158.    A true and correct copy of November 1, 2019 letter from Dovenmuehle is attached hereto as Exhibit 38.

159.    It is unclear which correspondence that this letter was acknowledging, but it is assumed that it acknowledged receipt of Plaintiff's October 30, 2019 RFI.

160.    In a letter to the McCants dated November 6, 2019, Dovenmuehle notified Plaintiffs of their right under the Equal Credit Opportunity Act to receive a copy of all written appraisals developed in connection with the McCants' loss mitigation application.

161.    A true and correct copy of the November 6, 2019 letter from Dovenmuehle is attached hereto as Exhibit 39.

162.    The November 6, 2019 letter from Dovenmuehle advised the McCants that Dovenmuehle "may order an appraisal to determine the property's value as part of the loss mitigation process and charge you for this appraisal." *Id*.

163.    In a letter dated November 7, 2019 sent to Plaintiff's bankruptcy counsel, Dovenmuehle provided information on Plaintiff's rights and protections under the U.S. Department of Housing and Urban Development's Servicemembers Civil Relief Act.

164.    A true and correct copy of November 7, 2019 letter from Dovenmuehle is attached hereto as Exhibit 40.

165.    In a letter dated November 11, 2019 to the McCants, Dovenmuehle acknowledged receipt of "your inquiry regarding the above-referenced mortgage loan and have referred your inquiry to the appropriate area for review."

166.    A true and correct copy of November 11, 2019 letter from Dovenmuehle is attached hereto as Exhibit 41.

167.    It is unclear which correspondence that this letter was acknowledging, but it is assumed that it was a second acknowledgement of Plaintiff's October 30, 2019 RFI.

168.    It does not appear that Dovenmuehle copied Plaintiff's bankruptcy counsel on its November 11, 2019 letter.

169.    Dovenmuehle responded to Plaintiff's October 30, 2019 RFI by letter dated November 14, 2019, in which Dovenmuehle stated that it had "fully investigated the issue" that "a denial letter was issued from the VA stating the reasons for the denial and that neither the borrowers nor Ms. Shank received a letter from the VA indicating that the loan modification was denied."

170.    A true and correct copy of November 14, 2019 letter from Dovenmuehle is attached

hereto as <u>Exhibit</u> <u>42</u>.

171.     In its November 14, 2019 letter, Dovenmuehle concluded that "no action on our part was required based on the following: The Department of Veterans [A]ffairs does not generate or mail out approvals or denials of said applications directly to the lender/servicer of the loan." *Id*. Dovenmuehle further alleged that, in the instance of the McCants, "we submitted the loan modification application to the VA for review and they responded with a denial of the application to us in electronic mail format stating: 'Your request…to modify the loan is denied. The borrower does not show affordability for the proposed modification.'  We then communicated the VA's decision to Mr. and Ms. McCants via a denial letter dated June 3, 2019." *Id*.  The letter further stated, "Enclosed is a copy of the denial letter that was issued in response to the VA's recommendation."  However, the alleged June 3, 2019 letter was not enclosed with the November 14, 2019 letter.

172.     Dovenmuehle has refused to provide a copy of the alleged communication from the VA denying Plaintiffs' loss mitigation application in response to Plaintiffs' October 30, 2019 RFI. Over two years has passed since Plaintiffs first requested this documentation through valid RESPA correspondence, Dovenmuehle has still not produced the alleged VA communication.

### k.  *Defendants violated RESPA's dual-tracking prohibition and damaged Plaintiffs.*

173.     Plaintiffs assert that the Defendants violated 12 CFR § 1024.41(f)(2)(i) of Regulation X, which provides that the Defendants cannot file for any judicial or non-judicial foreclosure if the borrower has submitted a complete loss mitigation application before the foreclosure is filed, and/or the absolute bar against filing of foreclosure during the pre-foreclosure period under 12 CFR § 1024.41(f)(1), in connection with the 2019 Application.

174.     Plaintiffs have been damaged by the actions of Defendants and are entitled to actual

and statutory damages, costs and legal fees.

175.    Defendants' actions forced Plaintiffs to file a Chapter 7 case to stop the unlawful foreclosure process. Plaintiffs had to pay $335.00 as the filing fee for their Chapter 7 Case. Defendants further damaged Plaintiffs further by resuming their foreclosure efforts after Plaintiffs had received their discharge.  Mr. McCants was forced to file a subsequent Chapter 13 bankruptcy case to save his home.  The filing fee for his Chapter 13 Case was $335.00.  This Chapter 13 case added extra, unnecessary expenses, as the Western District of Texas requires Chapter 13 debtors to make plan payments through the Chapter 13 Trustee (known as a conduit plan), which increases the expense of the Chapter 13 proceeding.

176.    Specifically, under Mr. McCants' Chapter 13 plan, he was required to pay $1,925.00 per month on his regular monthly mortgage and arrearage, which was dramatically more than the $1,123.44 monthly mortgage payment he was paying in 2018. Mr. McCants was required to pay this much larger amount to accommodate (a) the ten percent (10%) commission payable to the Chapter 13 Trustee under the conduit plan, plus the contractual interest of two and one quarter percent (2.25%), for a total of twelve and one quarter percent (12.25%) on the arrearage and regular monthly mortgage payments, (b) payment of the arrearage amount over a thirty-nine month plan period (as opposed to the standard five-year plan) imposed by the Bankruptcy Court.

177.    Plaintiffs also incurred significant non-litigation legal fees relating to the bankruptcy filings and modification efforts.  Prior to the Chapter 13 case, Plaintiffs paid their counsel $4,543.00 in legal fees and expenses, which amount includes legal fees for the Chapter 7 case, legal fees relating to Plaintiffs' efforts in obtaining a modification, and a prepetition down-payment for the Chapter 13 case.

178.    During the Chapter 13 case, the Chapter 13 Trustee distributed an additional

$2,555.00 to Plaintiffs' bankruptcy counsel in payment of bankruptcy attorneys' fees. Plaintiffs therefore have paid their bankruptcy counsel a total of $7,098.00 in fees and expenses.  This amount is exclusive of amounts incurred by the Plaintiffs in prosecuting the captioned litigation.

179.    Plaintiffs were also required to pay Chapter 13 Trustee fees during the Chapter 13 case.  In total, Plaintiffs paid $4,111.25 in Chapter 13 Trustee fees that they would not have had to pay if not for Defendants' illegal dual-tracking in violation of RESPA.

180.    Mr. McCants also had to take off time from work on two separate occasions to make certain required appearances in his Chapter 13 case, including time spent taking the financial management course and time spent appearing at his 341 Meeting of Creditors.  Mrs. McCants had to take at least two days off work to meet with her attorneys and participate in the Chapter 7 bankruptcy case.  Plaintiffs also had to miss time off work scheduling Zoom meetings with their counsel on various occasions.  As a result, Plaintiffs suffered lost wages.

181.    Plaintiffs also incurred out-of-pocket expenses for mileage in meetings with their counsel, and also for hand delivering mail to their counsel when Dovenmuehle failed to copy Plaintiffs' counsel, despite counsel's repeated requests to be copied, as described above.[9]  Plaintiffs traveled to their attorneys' office in Waco, Texas on at least three occasions to meet with counsel, for a total of 54.8 miles each way (109.6 miles round-trip).  Plaintiffs traveled to Waco three additional times to participate in their Chapter 7 and Chapter 13 bankruptcy cases, for a total of 59 miles each way (118 miles round-trip). Plaintiffs also traveled numerous times to their bankruptcy counsel's office in Killeen, Texas to hand-deliver mail which Dovenmuehle should have copied counsel, for a total of 4.9 miles each way (9.8 miles round-trip).

182.    Plaintiffs also incurred in postage expenses and copy charges in connection with

_____

[9] The standard corporate mileage rate during 2019 was $.58 per mile.

the mailing of RESPA correspondence through their counsel, following Defendants' failure to correct its servicing errors in connection with Plaintiffs' Homestead Loan following Plaintiffs' first NOE dated April 25, 2019.

183.    As stated above, to cover the extra cost of his Chapter 13 bankruptcy, Mr. McCants had to take a job doing over-the-road trucking in Texas. This job exacerbates his already-precarious heart condition because it requires that he sit for long periods of time in a prone position. This prolonged sitting is also painful on his joints.  Mr. McCants is unable to medicate these conditions fully because it might impair his driving. In addition, the job places Mr. McCants at greater risk for contracting COVID-19.  Because of his underlying heart condition, Mr. McCants is already in the high-risk group that is more susceptible to severe form of COVID-19. As stated above, Mr. McCants has already contracted pneumonia twice in the course of his employment.

184.    In addition, and equally damaging, is that Mr. McCants in the process of losing his social security disability payments because of his continued employment.  Under the Promoting Opportunity Demonstration or "POD" program through the Social Security Administration, his benefits will be suspended because his income from gainful activity exceeded the amount of benefits over a certain time period, ending in May of 2022.  Prior to May of 2022, Mr. McCants was stuck between the competing incentives of working and not working, but now he is losing important benefits.  And because of Mr. McCants' health issues, it is not certain that he will be able to work in the future.

185.    It is not necessary for the McCants to suffer the loss of their home to suffer damages under the applicable statues and regulations, which are in place to protect and encourage the loan modification process, not merely to provide a remedy for wrongful foreclosure.[10]  Mr. McCants

---

[10] Indeed, there is a separate cause of action for wrongful foreclosure recognized in many if not all jurisdictions. The handful of cases—commonly cited by loan servicers in defense of their illegal, dual-tracking practices—which appear

has served his country.  He should not be risking his health trying to save his house from a foreclosure-hungry servicer who has disregarded important RESPA safeguards in an attempt to take the home of a veteran.

186.    The Plaintiffs therefore seek to recover their damages in the form of actual and statutory damages, costs and legal fees in connection with Defendants' improper handling of the 2019 Application.

### l.    *The McCants Filed this Lawsuit for Dual-Tracking and Other RESPA Violations on February 8, 2021.*

187.    The McCants filed their Original Complaint on February 8, 2021, alleging dual-tracking by Defendants as to Plaintiffs' complete loss mitigation application submitted in February of 2019. ECF 1.

188.    After this lawsuit was filed, the parties agreed to mediate in an attempt to settle the lawsuit.  On April 12, 2021, Plaintiffs' counsel filed an Unopposed Motion for Mediation and Request for Stay Pending Mediation at ECF 17.  In that Motion, Plaintiffs requested a sixty (60) day stay based on their understanding with Defendants that Defendants would mediate in good faith.

### m.  *The McCants submit another Loss Mitigation Application.*

189.    Both parties understood that, as part of any settlement, the Plaintiffs' mortgage loan would need to be modified.  As stated, a modification was critical because it would allow Mr. McCants to dismiss his Chapter 13 case and avoid the associated expenses.  In addition, Mr. McCants could start building his credit and obtain access to financing for his trucking business.

---

to imply that there are no damages unless the plaintiffs have lost their home to foreclosure, are not controlling.  Indeed, a close reading of these cases shows that a completed foreclosure is *not* a requirement to maintain a dual-tracking claim: only that the plaintiff must plead actual damages. There is ample case law that does not require foreclosure as a condition to maintaining a dual-tracking claim.

PLAINTIFFS' SECOND AMENDED COMPLAINT                                              PAGE 33

190.     Both parties understood that Plaintiffs' modification request would be submitted to Dovenmuehle via Dovenmuehle's form modification application.   Plaintiffs completed a Loss Mitigation Application on May 7, 2021, which their counsel, Erin Shank, submitted to Defendant Dovenmuehle on May 7, 2021, with copies to Defendants' counsel.  The May 7, 2021 Application and cover letter is attached hereto as <u>Exhibit</u> <u>43</u>.

### n. *Dovenmuehle again mishandles the McCants' Loss Mitigation Application.*

191.     On May 12, 2021, Dovenmuehle sent the McCants directly a letter acknowledging receipt of the Loss Mitigation Application and stating that it needed documents, most of which the McCants had already supplied.

192.     A true and correct copy of the May 12, 2021 letter from Dovenmuehle is attached hereto as <u>Exhibit</u> <u>44</u>.

193.     The May 12, 2021 letter from Dovenmuehle stated:

Documentation Due Date: You should return the documentation listed above to us by 06/11/2021.  If you return the documentation listed above to us later than 06/11/2021 you will still be reviewed for all available loss mitigation options, as long as your application is complete far enough in advance of a scheduled foreclosure sale for us to perform an evaluation.   However, we encourage you to complete your application at your earliest possible opportunity.

194.     Although the McCants has already submitted most of the documents requested by Dovenmuehle in its May 12, 2021 letter, the McCants' counsel, Ms. Shank, resubmitted the additional documents on May 26, 2021.

195.     A true and correct copy of Ms. Shank's May 26, 2021 supplement is attached hereto as <u>Exhibit</u> <u>45</u>.

196.     Melissa Ritchie, a paralegal at Ms. Shank's office. called Dovenmuehle four times on June 8, 2021, to inquire as to whether Dovenmuehle had received the supplemental documents. Ms. Ritchie was unable to reach a live Dovenmuehle representative in the first two calls on June

8, 2021.  On her third call, Ms. Ritchie spoke with a representative named "Nelson," who hung up on Ms. Ritchie and did not call back.  On her fourth call, Ms. Ritchie spoke with a Dovenmuehle representative named "Cynthia," who informed her that the supplemental documents were "under review" and requested that Ms. Ritchie call back in one or two days.  Ms. Ritchie called Dovenmuehle twice more on June 10, 2021. But she was unable to reach a live representative after almost thirty minutes of being on hold.

197.     In a letter dated June 8, 2021—finally sent to Ms. Shank's office instead of the Plaintiffs—Dovenmuehle requested additional copies of documents that the McCants had already provided.

198.     A true and correct copy of the June 8, 2021 letter from Dovenmuehle is attached hereto as Exhibit 46.

199.     The June 8, 2021 did not contain a specific date by which Plaintiffs had to provide the (duplicate) documents.  *Id*.

200.     The McCants' counsel sent Dovenmuehle a responsive letter dated June 18, 2021, explaining that the requested documents had already been submitted and attaching additional copies of the same documents.

201.     A true and correct copy of the June 18, 2021 letter from Plaintiffs' counsel is attached hereto as Exhibit 47.

202.     On June 16, 2021 and June 23, 2021, Dovenmuehle sent Ms. Shank's office letters once again stating that the McCants had not sent Dovenmuehle documents that she had already sent.

203.     True and correct copies of the June 16, 2021 and June 23, 2021 letters from Dovenmuehle are attached hereto as Exhibit 48 and Exhibit 49 respectively.

204.    Neither the June 16, 2021 nor the June 23, 2021 letters from Dovenmuehle contained specific deadlines for Plaintiffs to submit the duplicate documents.

205.    Frustrated, Ms. Shank asked her paralegal, Ms. Ritchie, to call Dovenmuehle and ask why Dovenmuehle was continuing to request documents that the McCants had already sent. Ms. Ritchie talked with a Dovenmuehle employee named Beatrice, who works in the Loss Mitigation Department, and Beatrice confirmed that Dovenmuehle had received the documents from the McCants, but Ms. Shank's office needed to change the dates on the documents submitted in May 2021 so that they were dated July of 2021.  Ms. Shank was hesitant to redate the documents, and she expressed her hesitancy to Defendants' counsel, Mr. Cronewett, in an email dated July 7, 2021.

206.    In a letter dated July 7, 2021, Dovenmuehle denied Plaintiffs' May 7, 2021 Loss Mitigation Application on the alleged (and incorrect) basis that the application submitted by the McCants was incomplete. This was not a valid reason for Dovenmuehle to deny the May 7, 2021 Loss Mitigation Application, because the McCants had in fact submitted all documents requested, as confirmed by Beatrice in the prior call with Ms. Ritchie.

207.    A true and correct copy of the July 7, 2021 letter from Dovenmuehle is attached hereto as Exhibit 50.

208.    Notwithstanding Dovenmuehle's continued mishandling of their application, the McCants submitted yet another complete Loss Mitigation Application dated July 20, 2021.

209.    A true and correct copy of the July 20, 2021 Application is attached hereto as Exhibit 51.

210.    The McCants sent a Notice of Error to Dovenmuehle dated July 22, 2021, in which the McCants identified numerous errors relating to the June 16, 2021 letter, the June 23, 2021

Letter and the July 7, 2021 letter denying the May 7, 2021 Loss Mitigation Application.

211.    A true and correct copy of the July 22, 2021 NOE is attached hereto as <u>Exhibit</u> <u>52</u>.

*o. **Dovenmuehle finally admits it has a complete Loss Mitigation Application.***

212.    Dovenmuehle sent the McCants a letter dated July 23, 2021 which stated "YOUR LOSS MITIGATION APPLICATION IS COMPLETE."

213.    A true and correct copy of the July 23, 2021 letter from Dovenmuehle (the "7/23/21 Letter") is attached hereto as <u>Exhibit</u> <u>53</u>.

214.    The 7/23/21 Letter states that Dovenmuehle received the McCants' Loss Mitigation Application on July 22, 2021 and determined that it was complete.  The 7/23/21 Letter further states: "We will review your loan for eligibility and provide notice of which loss mitigation options, if any, are available to you within 30 calendar days of receipt of your completed application."  The deadline for Dovenmuehle to respond to the McCants' July 20, 2021 Loss Mitigation Application was therefore September 2, 2021.

*p. **Dovenmuehle Denies Error Despite Mishandling Plaintiffs' Modification Application.***

215.    Meanwhile, Defendants responded to Plaintiffs July 22, 2021 NOE by letter dated August 5, 2021

216.    A true and correct copy of Dovenmuehle's August 5, 2021 RESPA response is attached hereto as <u>Exhibit</u> <u>54</u>.

217.    In its August 5, 2021 response, Dovenmuehle states that as follows:

We fully investigated the issues you raised and have determined that no action was required to address these issues.

However, to accommodate this issue, we have taken the following steps: a new process is being implemented to allow the addition of language to clarify that a document was received but, is illegible or that the document needs to be updated to reflect the new submission date.

Regarding the issues above, while your documents were indeed received, there were either illegible or not updated to reflect the new submission date, and thus, we were unable to review the documents as part of your submission. We mailed missing document letters on numerous occasions indicating a need for specific documents, but ultimately continued to receive illegible documents or non-updated documents. As a result, on July 7, 2021, a letter was sent to you indicating that we would be closing the review.

218.    As Dovenmuehle all but admits in its August 5, 2021 RESPA response, Dovenmuehle never communicated to Plaintiffs or their counsel, either orally or in writing, that any of the documents were illegible, and it fails to identify the documents that it claims were illegible.

### q. *Dovenmuehle fails to evaluate Plaintiffs' complete Loss Mitigation Application.*

219.    Dovenmuehle did not respond to the McCants' July 20, 2021 Loss Mitigation Application by September 2, 2021, as required under RESPA. Therefore, Dovenmuehle did not comply with 12 C.F.R. § 1024.41(c)(1) because it failed, within thirty (30) calendar days of receiving the complete loss mitigation application on July 23, 2021, to evaluate the McCants for all loss mitigation options available to the borrower, and it failed to provide the required written notice stating its determination of which loss mitigation options, if any, it will offer the McCants on behalf of the owner or assignee of their mortgage.

220.    On September 7, 2021, Melissa Ritchie from the office of Erin Shank PC called Dovenmuehle to check the status of Dovenmuehle's delinquent response to the Loss Mitigation Application. Ms. Ritchie spoke with a Dovenmuehle representative named Sharon, who stated that an email "regarding a repayment plan had sent to underwriting." After placing the call on hold for several minutes, Sharon returned to state that there had been "no updates since August 31," that underwriting had been asked for an update, but underwriting had failed to update the notes in the system. Dovenmuehle provided no additional information at that time.

221.    On September 30, 2021, Ms. Ritchie again contacted Dovenmuehle to inquire about the Loss Mitigation Application.  As of this date, the Loss Mitigation Application had been pending for fifty-eight (58) days.  In response to Ms. Ritchie's call, a Dovenmuehle representative stated that U.S. Department of Veterans Affairs "declined the first option in the Veterans Affairs waterfall," which presumably means that the Veterans Affairs declined the repayment option for the McCants.  The McCants were already "repaying" the arrearage through Mr. McCants' Chapter 13 Plan, which has a term of thirty-nine months.  Dovenmuehle failed to provide written documentation of the representative's claim that Veterans Affairs declined the repayment option, and Dovenmuehle failed to provide any notice, whether written or oral, of its evaluation of the remaining loss mitigation options available under the Veterans Affairs waterfall.

222.    The second option under the VA loss mitigation waterfall is a loan modification.  This is the very relief the McCants were seeking.  A loan modification differs from repayment, in that a loan modification is a re-amortization of the loan arrearage and principal over a new term, whereas a repayment involves making catch-up payments over a short term to cure the arrearage.  Dovenmuehle also failed to provide any evidence of its assertion that Veterans Affairs had declined the repayment option.

223.    During the September 30, 2021 call, the Dovenmuehle representative promised to contact Ms. Ritchie on October 5, 2021 to provide information about other options, but Dovenmuehle failed to follow up or otherwise contact Ms. Ritchie on that date or any time thereafter.  Again, Dovenmuehle had still not provided the notice required under 12 C.F.R. § 1024.41(c)(1).

224.    Also during the September 30, 2021 call, the Dovenmuehle representative indicated that the account had been marked as being in litigation, with the notation that Dovenmuehle was

not allowed to contact the Plaintiffs because the account is in litigation.

225.    12 C.F.R. § 1024.36(f) provides a list of exceptions to the requirement of a servicer to provide information to a borrower under RESPA.  Litigation is not listed as an exception. Accordingly, any assertion that Dovenmuehle is relieved from or is otherwise prohibited from complying with the requirements of RESPA due to pending litigation is without support.

226.    As a result of Dovenmuehle's actions, Dovenmuehle has violated RESPA by failing to provide a timely response to the McCants' July 20, 2021 Loss Mitigation Application.  This violation of RESPA is an error under 1024.35(b)(11).

227.    Plaintiffs' counsel sent an additional NOE to Dovenmuehle dated October 12, 2021, setting out these additional errors.

228.    A true and correct copy of the October 12, 2021 NOE is attached hereto as <u>Exhibit 55</u>.

**r.   *Dovenmuehle's continued mishandling of the loss mitigation process is inexcusable.***

229.    Defendants agreed to mediate this case, and knowing that a loan modification was a necessary term in the mind of Plaintiffs, encouraged the McCants to submit a loan modification directly to Dovenmuehle in advance of mediation.   Because of Dovenmuehle's continued mishandling of the loan modification process, and repeated RESPA errors in relation to same, the parties continued the stay of the litigation for many months.  Plaintiffs originally sought a stay by motion filed on April 13, 2021.  Mediation in this case was again continued–this time to November 15, 2021, which was a stay of over seven months, and still Dovenmuehle had not properly evaluated the McCants for a modification of their loan.   These delays were egregious and inexcusable.

### s.   *Plaintiffs suffer damages from Dovenmuehle's continued RESPA violations.*

230.    Meanwhile, the McCants' damages continued to increase, in the form of additional fees and expenses relating to the Mr. McCants' Chapter 13 case, additional attorneys' fees, both for RESPA correspondence and litigation of this matter, as well as continued emotional distress and stress on the McCants as they endure this protracted abuse.

231.    In addition, Mr. McCants' credit damages from having to file a Chapter 13 case increased as these delays continued, as the damage to his credit is preventing him from starting his own trucking business, which is a particularly profitable business in the current economic market. As stated, Mr. McCants has been forced to remain a driver, risking his health every time he drives. If Mr. McCants had been free to start his trucking business, he would be able to assume a much less risky role as a dispatcher.  The Defendants' insistence on foreclosure and failure to evaluate his modification application prevented this.

### t.   *Dovenmuehle states it has "gone back" to the VA to request a loan modification.*

232.    In advance of the scheduled mediation, Plaintiffs' counsel sent a settlement demand to Defendants' counsel dated November 8, 2021.  Although the Defendants did not respond to the settlement demand, counsel for Defendants emailed counsel for Plaintiffs on November 11, 2021 stating: "Dovenmuehle has gone back to the VA to request approval for loan modification terms, but the VA is saying that it will take another ten days or so for a response.  For mediation to have a chance, we need to know if the VA will give us this approval.  So, I think we need to move the mediation back by two weeks."

233.    A true and correct copy of Defendants' counsel's November 11, 2021 email is attached hereto as <u>Exhibit</u> <u>56</u>.

234.    Based on this small light of hope, Plaintiffs agreed to continue the mediation date

to a mutually agreeable date in December 2021.  The Parties therefore filed a joint motion to continue the stay of this litigation yet again, which this Court granted.

235.    The Parties thereafter agreed to a mediation date of December 28, 2021.

***u. Dovenmuehle Admits Servicing Error in Failing to Respond Timely to Modification Application.***

236.    On November 23, 2021, Dovenmuehle responded to Plaintiffs' October 12, 2021 NOE.

237.    A true and correct copy of Dovenmuehle's November 23, 2021 response to Plaintiffs' October 12, 2021 NOE is attached hereto as <u>Exhibit</u> <u>57</u>.

238.    In its November 23, 2021 letter, Dovenmuehle admitted that its "failure to evaluate the borrower for all loss mitigation options available to the borrower as required under 12 C.F.R. § 1024.41(c)(1)(i)" was an error under RESPA: "We acknowledge that it is an error that the review has taken this long to complete." *Id*.

239.    In response to Plaintiffs' assertion that Dovenmuehle failed to provide the borrower, timely or otherwise, with a notice in writing stating servicer's determination of which loss mitigation options, if any, it will offer to borrower on behalf of the owner or assignee of the mortgages as required under 12 C.F.R. § 1024.41(c)(1)(ii), Dovenmuehle asserted that this was "not an error," asserting further that the "party [Plaintiffs' counsel] spoke with on September 7, 2021 should not have informed you that your client was approved for a repayment plan as this was not the case" but concluded "no error" because "the logical explanation is that your client was not approved for a repayment plan."  Dovenmuehle's explanation, in addition to being inconsistent and insufficient, does not change the fact that Dovenmuehle failed to provide the written notice required under § 1024.41(c)(1)(ii), and therefore did not cure or resolve the error.

240.    Dovenmuehle also denied that its representative asserted that there is a litigation

exception to Dovenmuehle's obligations under RESPA, stating that its representative backtracked on this assertion by asking Ms. Ritchie to confirm that Dovenmuehle was authorized to call Plaintiffs' attorney representatives only.  *Id*.

### v. *The Modification Offer*

241.    On December 9, 2021, Defendants' counsel emailed Plaintiffs' counsel a proposed modification dated December 8, 2021 (the "Modification Offer").

242.    A true and correct copy of the December 8, 2021 Modification Offer, with counsel's email, is attached hereto as Exhibit 58.

243.    Defendants sent the Modification Offer almost two years after Plaintiffs' original loss mitigation application in February of 2019.

244.    The Modification Offer stated: "Your request for a Loan Modification has been approved." *Id*.

245.    The Modification Offer further stated that Plaintiffs must agree to the proposed modification terms by December 23, 2021.  The Modification Offer therefore required Plaintiffs to agree to the modification terms five days prior to the scheduled mediation.

246.    The Modification Offer had signature lines and notary blocks for Plaintiffs, as well as a signature line for Village Capital, as purported owner of Plaintiffs' mortgage loan.  The Modification Offers stated that the Modification must be signed by all parties.  *Id*.

247.    Further, the Modification Offer identified Village Capital & investment, LLC as the "Lender" and the McCants as "Borrower" on page 1 of the Modification.  *Id*.  The Modification Offer also provided for the capitalization of a new unpaid principal balance ("UPB") as a stated debt amount owed by Borrower to Lender, including new fees and charges ("other amounts") asserted by Village Capital in ¶ 1 of the Modification Offer.  *Id*.  Paragraph 2 of the Modification

Offer included a promise by the McCants to pay the new UPB to Village Capital with new stated maturity date. The Modification Offer also includes a restatement and enhancement of lien in favor of Village Capital for amounts due under the note in ¶ 3 of the Modification Offer.

248. Meanwhile, on or about December 14, 2021, Ms. Shank received correspondence from Dovenmuehle dated November 29, 2021 (more than two weeks prior to the date of receipt), which appeared to be a notice required under § 1024.41(c)(1)(ii) of Regulation X, and which indicated that the McCants qualified for a VA Affordable Modification.

249. A true and correct copy of the November 29, 2021 correspondence from Dovenmuehle is attached as Exhibit 59.

250. This notice was made approximately three and one half months past the deadline required under Regulation X.

### w. *Plaintiffs Accept the Modification Offer*

251. On December 22, 2021, Plaintiffs' counsel sent Plaintiffs' signed and notarized modification agreement to Defendants (the "Modification"), together with other required documentation and fees, via overnight delivery such that it would arrive no later than December 23, 2021.

252. A true and correct copy of the Modification signed by Plaintiffs is attached as Exhibit 60.

### x. *Mediation Finally Occurs.*

253. On December 28, 2021, the Parties engaged in a mediation through the online meeting platform Zoom. The parties did not settle the underlying claims in this lawsuit at mediation.

*y.  **Village Capital Agrees to Counter-Sign and File Modification.***

254.   Village Capital agreed to counter-sign the Modification and record same in the deed records of Bell County, Texas within thirty days, which would be January 28, 2022.

255.   Based on Village Capital's promise to countersign and file the Modification and in full reliance on same, Mr. McCants dismissed his Chapter 13 case by right so that he did not owe duplicative payments on January 1, 2022.  Otherwise, Mr. McCants would have been obligated to pay his Chapter 13 plan payment, which included an arrearage payment and regular monthly mortgage payment under the original mortgage, as well as an additional payment under the Modification.

256.   A true and correct copy of the order dismissing Mr. McCants' Chapter 13 bankruptcy cases is attached hereto as Exhibit 61.

*z.  **Village Capital Notifies Plaintiff that it sold Loan Prior to Executing the Modification.***

257.   On or around January 18, 2022, Plaintiffs received a Notice of Sale of Ownership of Mortgage Loan (the "Notice of Sale") dated December 30, 2021 (over two weeks prior to its receipt).

258.   A true and correct copy of the Notice of Sale is attached hereto as Exhibit 62.

259.   Shockingly, the Notice of Sale indicates that Village Capital sold Plaintiffs' mortgage loan *effective as of December 1, 2021* to a new owner, identified as RMTP Pass-Through Trust, Series 2021-BKM-TT-V ("RMTP"). The Notice of Sale appears to indicate that Dovenmuehle remains the servicer of the loan, but the Notice of Sale itself was transmitted on the letterhead of a different servicer, Rushmore Financial Services ("Rushmore"), and the Notice of Sale names an additional "Agent" for the owner as PRP Advisors, LLC. Furthermore, the address for RESPA correspondence is stated to be an address under the control of Rushmore.

260.    Village Capital did not have the authority to make the December 8, 2021 Modification Offer, because the transfer to RMPT occurred one week prior, on December 1, 2021. As stated, the Modification Offer itself lists the owner as Village Capital and provides a signature line for Village Capital (but none for the servicer, Dovenmuehle).   Village Capital did not have authority to sign the Modification Offer as the owner on January 5, 2022, because it was no longer owner of the loan at that time.   Notwithstanding this fact, Village Capital did, in fact sign the Modification on January 5, 2022 and filed a copy of the Modification in the real property records of Bell County, Texas on February 2, 2022.

261.    A true and correct copy of the Modification signed and filed by Village Capital is hereto as Exhibit 63.

262.    Village Capital's lack of authority to enter into the Modification has rendered the entire modification process meaningless.   Without some further action or agreement by the new owner of the Homestead Loan, RMTP is not legally bound to the terms of the Modification.

263.    Defendants and their counsel have failed to provide any evidence that Village Capital was authorized to sign the Modification on behalf of RMTP or evidence that RMTP is bound by the Modification.   Plaintiffs' counsel has repeatedly requested evidence showing same, both informally through correspondence with counsel and through formal discovery requests to Defendants.   This includes Defendants' answers to written discovery and production of documents which were made on March 21, 2022.

### aa. Plaintiffs have been Damaged by Defendants' Actions.

264.    As a result, Plaintiffs have been damaged. Plaintiffs have incurred significant non-litigation attorneys' fees in the entire modification process since the filing of the Complaint, which includes multiple applications and multiple extensions of the stay of this litigation.   Plaintiffs have

incurred significant attorneys' fees in connection with the mediation, as well as the cost of a half-day mediation ($650).  Mr. McCants relied on the representations of Defendants and their counsel in signing the Modification and dismissing his Chapter 13 case, leaving him exposed to possible foreclosure by the new owner, who has no continuing legal obligation to abide by the terms of the Modification.

265.    In addition, Plaintiffs have suffered additional emotional distress based on the fact that the rug has once again been pulled out from under them: Plaintiffs believed that some progress had been made toward resolution of this case which would allow them to move forward and eliminate the threat of losing their home; instead it turns out the Modification is not legally enforceable as to the new owner, RMTP.  Plaintiffs have been damaged because Defendants actions induced Plaintiffs into believing that Village Capital was the owner of the mortgage loan at the time it made the Modification Offer and counter-signed same.  Mr. McCants dismissed his Chapter 13 bankruptcy case in reliance on Defendants' representations, but now it appears that the McCants are in technical default, since the loan is not legally modified and Mr. McCants had not yet completed his cure of the pre-petition arrearages under the plan.  The Plaintiffs continue to suffer credit damages as a result of the two-plus years they have waited to get their modification, which sadly continues.

**CLAIMS FOR RELIEF**

**COUNT I**
**(VIOLATION OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT AND DUAL-TRACKING PROHIBITIONS OF REGULATION X)**

266.    Plaintiffs incorporate herein by reference all preceding paragraphs as if fully set forth herein.

267.    Section 12 CFR § 1024.41(f)(2)(i) of Regulation X provides that the Defendant Dovenmuehle cannot file for any judicial or non-judicial foreclosure if the borrower has submitted

a complete loss mitigation application before a foreclosure is filed.

268.    This prohibition on the filing of such a foreclosure proceeding applies whether the completed loss mitigation application was filed by the borrower during the first 120 days that the borrower was delinquent or at any time after the first 120 days but before a foreclosure proceeding is filed.  12 CFR § 1024.41(f)(1) and (f)(2)(i).

269.    This absolute prohibition applies until the servicer has denied the application, the time to appeal the denial has expired, or the borrower has appealed the denial and no final decision has been made with respect to the appeal.  12 CFR 1024.41(f)(2)(i).

270.    Because Plaintiffs had submitted a complete loss mitigation application (the 2019 Application) before Defendants filed their initial Notice of Foreclosure, Defendants were prohibited from proceeding with foreclosure until Defendants had denied the application.   But Defendants did violate RESPA by filing a Notice of Foreclosure prior to sending the required notice to Plaintiffs denying their 2019 Application.

271.    Defendants also violated RESPA and Reg. X to the extent they sought foreclosure during the first 120 days that Defendants were delinquent.

272.    Because Dovenmuehle made no loss mitigation offer to Plaintiffs, the Plaintiffs neither rejected the offer nor failed to comply or otherwise perform the terms of the agreement as provided for by 12 CFR 1024.41(f)(2)(iii).

273.    Plaintiffs allege that the conduct of the Defendant Dovenmuehle in this case constitutes a willful violation of the applicable provisions of Regulation X.

274.    Because Dovenmuehle's conduct described herein was performed as servicer and thus agent for and on behalf of Village Capital in connection with the Homestead Property, Village Capital is also liable for Dovenmuehle's actions.

275.     Village Capital is also independently liable for the bad acts described in this section to the extent it participated in the servicing decisions and RESPA/Reg. X violations described herein.

276.     As a result of this violation by the Defendants as to Plaintiffs' 2019 Application, Defendants are liable to Plaintiffs for actual damages, statutory damages, costs and attorneys' fees under 12 U.S.C.§ 2506(f).

277.     Dovenmuehle's failure to comply with the requirements of Reg. X and RESPA with regarding to Plaintiffs' 2019 Application has damaged Plaintiffs in the form of non-litigation attorneys' fees relating to the modification process fees and the subsequent bankruptcy cases, Chapter 7 filing fees, Chapter 13 filing fees, Chapter 13 Trustee fees, out-of-pocket expenses, loss profits from having to miss work to attend Chapter 7 and Chapter 13 meetings, as well as meetings with their counsel.  Dovenmuehle's actions have also damaged Plaintiff in the form of emotional distress, as well as other damages outlined in this Complaint.

278.     In addition, after the Complaint was filed in the captioned case, Defendants failed to evaluate Plaintiffs' complete loss mitigation application submitted on May 7, 2021 despite the fact that it was a complete loss mitigation application.  Instead, Defendants denied the application based on the false assertion that it was not complete.

279.     Defendants also have an obligation to exercise reasonable diligence in collecting documents under 12 C.F.R. 1024.41(b)(1), which it violates if it repeatedly requests documents it already possesses or documents that it knows or should know are not required to complete the borrower's application. *Dionne v. Fed. Nat'l Mortg. Ass'n*, No. 15-cv-56, 2016 WL 6892465 at *6 (D.N.H. Nov. 21, 2016); *see also Jackson v. Bank of Am., N.A.*, No. 16-CV-787-FPG, 2017 WL 5598856, at *4 (W.D.N.Y. Nov. 21, 2017)(plaintiff stated a claim for a violation of 12 C.F.R.

1024.41(b)(1) in part because "Defendant repeatedly asked Plaintiffs for documents, such as tax returns and social security letters, that they had already submitted"). As stated above, Defendants requested the same documents repeatedly during the application period for the May 7, 2021 Application.

280.     Defendants failed to evaluate Plaintiffs' subsequent loss mitigation application submitted on July 20, 2021 within thirty calendar days as required by Reg. X/RESPA.  Instead, Defendants waited almost five months to respond to Plaintiffs' July 20, 2021 Application.

281.     As stated above, Dovenmuehle admitted in its November 23, 2021 response to Plaintiffs' October 23, 2021 NOE that its "failure to evaluate the borrower for all loss mitigation options available to the borrower as required under 12 C.F.R. § 1024.41(c)(1)(i)" was an error under RESPA: "We acknowledge that it is an error that the review has taken this long to complete." *See* Ex. 57.

282.     Plaintiffs' claims are not barred by 12 C.F.R. § 1024.41(i) with regard to "duplicative requests" because Defendants failed to comply with the requirements of Section 12 C.F.R. § 1024.41 as to Plaintiffs initial loss mitigation application submitted in February of 2019, for the reasons stated herein, including both the dual-tracking prohibition as well as Defendants' failure to provide a specific reason for the alleged denial of that application, including the investor/owner requirement that formed the basis of the denial as required under Comment 41(d)(1) of Supplement I to section 1024.41.

283.     Plaintiffs allege that the conduct of the Dovenmuehle in connection with the two loss mitigation applications submitted by Plaintiffs after they filed the captioned lawsuit–that is the May 7, 2021 Application and the July 20, 2021 Application–constitutes a willful violation of the applicable provisions of Reg. X.

284.     Village Capital is also liable for the actions of Dovenmuehle, as its agent, and Village Capital is also independently liable to the extent it participated in the servicing decisions and RESPA/Reg. X violations which occurred after the filing of the Complaint.

285.     Plaintiffs have been damaged by Defendants' RESPA violations as set forth herein with regarding to the May 7, 2021 Application and the July 20, 2021 Application.  These damages include significant attorneys' fees in the entire modification process since the filing of the Complaint, which includes multiple applications and multiple extensions of the stay of this litigation. Plaintiffs have incurred significant attorneys' fees in connection with the mediation itself, as well as the cost of a half-day mediation ($650).  Mr. McCants relied on the representations of Defendants in dismissing his Chapter 13 case, leaving him exposed to possible foreclosure by the new owner, who is not a signatory to the Modification.  Plaintiffs have also suffered emotional distress as a result of these violations.

286.     The RESPA violations complained of are separate and apart from the violations that occurred prior to the filing of Plaintiffs' Complaint in the captioned case.

287.     However, combined with the violations of 12 C.F.R. § 1024.41 that occurred prior to the filing of Plaintiffs' Original Complaint in this case, Defendants' additional violations of violations of 12 C.F.R. § 1024.41 set forth herein constitute a pattern and practice of noncompliance with regarding Dovenmuehle's mortgage servicing activities relating to loss mitigation applications, including compliance with RESPA and its provisions.

288.     As a result of this violation by the Defendants, Defendants are liable to Plaintiffs for actual damages, statutory damages, costs and attorneys' fees under 12 U.S.C.§ 2506(f).

289.     Plaintiffs are also entitled to additional damages, as the court may allow, in the case of pattern or practice of noncompliance with the requirement of this section, in an amount of

$2,000 per violation.

## COUNT II
## (VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT)

290.   The allegations in this complaint are re-alleged and incorporated herein by reference.

291.   Plaintiffs are consumers for purposes of the Texas Debt Collection Act ("TDCA") (Tex. Fin. Code Ann. 391.001 et seq.)

292.   Dovenmuehle is a debt collector for purposes of the TDCA.  Village Capital is a debt collector for the purposes of the TDCA.  In addition, because Dovenmuehle's conduct described herein was performed as servicer and thus agent for and on behalf of Village Capital in connection with the Homestead Property, Village Capital is also liable for Dovenmuehle's actions. Village Capital is also independently liable for the bad acts described in this section to the extent it participated in the servicing decisions and violations of the TDCA described herein.

293.   Defendants have violated the TDCA § 392.301(a)(8) by threatening to take an action prohibited by law.   Specifically, Defendants threatened to foreclose on Plaintiffs' Homestead by filing the Notice of Foreclosure when Plaintiffs' 2019 Application was still pending. This is expressly prohibited by RESPA which, through its implementing regulation, Reg X, states that a servicer may not make the first notice of filing to initiate a nonjudicial foreclosure proceeding while a borrower's complete loss mitigation application is pending.  12 CFR § 1024.41(f)(2)(i).

294.   Defendants did not have a statutory or contractual right to exercise non-judicial foreclosure, as contemplated under the "exception" in TDCA §392.301(b)(3), at the time it filed the Notice of Foreclosure, because Reg. X and RESPA block this right when a complete loss mitigation application is pending, and because Defendants expressly waived their right to foreclose in Dovenmuehle's March 5, 2019 Letter, which stated "[f]oreclosure will not occur while a

complete loss mitigate package is being reviewed…" *See* Exhibit 4 at pg. 4.

295.    Defendants have also violated TDCA § 392.304(a)(19) by using false representations or deceptive means to collect a debt.

296.    Specifically, Defendants, both directly and through counsel, represented that Village Capital owned the mortgage loan, and caused Plaintiffs to agree to specific terms of the Modification Offer, when Village Capital did not own the mortgage loan. In reliance on the representations of Dovenmuehle, Mr. McCants signed the Modification Offer and dismissed his Chapter 13 bankruptcy case.   Specifically, and as stated above, the proposed Modification identified Village Capital & Investment, LLC as the "Lender" and the McCants as "Borrower" on page 1 of the Modification.  *See* Ex. 58.  The Modification also provided for the capitalization of a new UPB as a stated debt amount owed by Borrower to Lender, including new fees and charges ("other amounts") asserted by Village Capital in ¶ 1 of the Modification.  *Id*.  Paragraph 2 of the Modification included a promise by the McCants to pay the new UPB to Village Capital by a new stated maturity date, when Plaintiffs did not in fact owe money to Village Capital.   The Modification also includes a restatement and enhancement of lien in favor of Village Capital for amounts due under the note in ¶ 3 of the Modification.  Each of these representations were false and deceptive in violation of TDCA § 392.304(a)(19).

297.    Defendants further misrepresented the character of the consumer debt, in violation of TDCA § 392.304(a)(8), when it represented that Village Capital was the owner of Plaintiffs' mortgage loan in connection with the Modification.  Defendants also misrepresented the character of the consumer debt by providing for the capitalization of a new unpaid principal balance payable to Village Capital when Village Capital no longer owned the loan.  Defendants misrepresented the character of the consumer debt by providing that Plaintiffs pay the new UPB to Village Capital by

a new stated maturity date. Further, Defendants misrepresented the character of the consumer debt by including a reinstatement and enhancement of Village Capital's lien when Village Capital did not own the loan and therefore did not hold a security interest in the Homestead Property.

298. Plaintiffs are seeking to *enforce* the underlying Modification, so that Plaintiffs may continue their performance under same. Defendant Dovenmuehle misled Plaintiffs into believing that Village Capital was the owner of the loan and had legal standing to bind the owner of Plaintiffs' mortgage loan to the terms of the Modification, at a time when the actual owner of the mortgage loan was not a party to the modification.

299. As a direct and proximate cause of Defendants' violations of the TDCA, Plaintiffs have been damaged as described herein, including economic damages. Specifically for damages incurred relating to Defendants taking action prohibited by law in connection with the filing of their Notice of Foreclosure on April 15, 2019 before denying the 2019 Application, Plaintiffs suffered damages as described in the specified paragraphs above, which are restated herein: ¶¶ 135-138 (financial burden of Chapter 13 case and health risks associated with forced employment of 100% disabled veteran to finance Chapter 13 case), ¶ 139 (credit damages and loss opportunity), ¶¶ 140-143 (emotional distress damages), ¶¶ 154-156 (additional cost of Chapter 13 case), ¶¶ 175-179 (additional non-litigation fees and expenses relating to Chapter 7 and 13 bankruptcy cases), ¶ 180 (lost wages), ¶¶ 181-182 (out of pocket expenses), ¶ 183 (health risks associated with forced employment), and ¶ 184 (loss of benefits).

300. With regarding to damages suffered from Defendants' violations of the TDCA after the filing of Plaintiffs' Complaint, Plaintiffs suffered additional damages as described in paragraphs 264-265 above, including additional significant non-litigation attorneys' fees for repeated modification process, attorneys' fees relating to mediation and $650 mediation fee,

detrimental reliance relating to Mr. McCants' voluntary dismissal of his Chapter 13 bankruptcy case leaving him in technical default under the Note and Deed of Trust, and emotional distress.

301.    Defendants have willfully, maliciously and egregiously violated the TDCA and Plaintiffs are entitled to an injunction, economic and non-economic damages, as well as exemplary damages and reasonable attorneys' fees.  TDCA § 392.403.

## COUNT III
**(VIOLATIONS OF THE REAL ESTATE SETTLEMENT PROCEDURES ACT RELATING TO QUALIFIED WRITTEN REQUESTS)**

302.    The allegations in this complaint are re-alleged and incorporated herein by reference.

303.    In January 2013, the Consumer Financial Protection Bureau ("CFPB") issued a number of final rules concerning mortgage markets in the United States, pursuant to the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), Public Law No. 111-203, 124 Stat. 1376 (2010).

304.    Specifically, on February 14, 2013, the CFPB issued the Amended Real Estate Settlement Procedures Act ("RESPA"), 78 Fed. Reg. 10695 (Regulation X)(February 14, 2013)(codified at 12 C.F. R. p. 1024).  This Regulation became effective on January 10, 2014.

305.    Plaintiffs' homestead mortgage loan at issue is a "federally related mortgage loan" as defined in 12 U.S.C. § 2602(1) and is therefore subject to RESPA.

306.    Dovenmuehle is subject to the Regulations and does not qualify for any of the exceptions noted in the Regulations for "small servicers."  Neither is Dovenmuehle a "qualified lender" as defined in 12 CFR § 617.7000.

307.    Section 1025.35 of Regulation X governs error resolution procedures and permits borrowers to submit written notices of servicing errors to a servicer. 12 C.F.R. § 1025.35(a).

Section 1025.35(b) contains a list of servicing errors, including specific references to dual-tracking violations under 12 C.F.R. § 1024.41, as well as a "catch-all" provision for "[a]ny other error relating to the servicing of a borrower's mortgage loan."  12 C.F.R. § 1025.35(b)(11).  Section 1024.41, which governs loss mitigation applications, is not limited to just the dual-tracking provisions; rather, it contains a host of servicing requirements relating to borrowers' lost mitigation applications.

308.    As discussed in detail above, Plaintiffs and their counsel sent multiple letters to Dovenmuehle pointing out their errors in servicing the Plaintiffs' Homestead Loan, specifically relating to Defendants' violations of Reg. X's prohibition on dual tracking and other requirements of 12 CFR § 1024.41

309.    Section 1025.35 of Reg. X governing error resolution procedures specifically identifies dual-tracking as a servicing error.  *See* 12 C.F.R. 1025.35(b)(9) which identifies as an "error" the following: "making the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process in violation of § 1024.41(f) or (j)."

310.    As described *supra,* Dovenmuehle failed to provide Plaintiffs with complete responses to each of Plaintiff's Requests for Information and Notices of Error and failed to conduct a reasonable investigation as to the issues raised in same.

311.    As described above, Plaintiffs sent an April 25, 2019 NOE asserting that Dovenmuehle's actions of illegal dual-tracking constituted a servicing error under RESPA.  *See* Exhibit 12, *supra*.

312.    Dovenmuehle's May 8, 2019 response to Plaintiffs' April 25, 2019 NOE contained a detailed listing of the correspondence in Dovenmuehle's file, but it provided no substantive response as to why Dovenmuehle believed Plaintiffs' loss mitigation application was incomplete.

*See* Exhibit 18, *supra*. Its assertion that no error was committed was therefore incorrect.  For this reason, it is clear that Dovenmuehle failed conduct a reasonable investigation into whether Plaintiffs' 2019 Application was complete before Defendants posted Plaintiffs' home for foreclosure.

313.    As shown above, Plaintiffs did, in fact, submit a complete loss mitigation application in advance of Dovenmuehle's Notice of Foreclosure Sale.    Furthermore, Dovenmuehle's May 8, 2019 response confirms that Dovenmuehle sent their April 17, 2019 "denial letter" *after* Dovenmuehle's attorneys, Mackie, Wolf, Zientz & Mann, P.C., posted the McCants' Homestead Property for non-judicial foreclosure sale two days prior, on April 15, 2019. This in itself constitutes an admission of dual-tracking.

314.    Dovenmuehle's May 8, 2019 response to Plaintiffs' April 25, 2019 NOE, which was sent pursuant to 12 C.F.R. § 1024.35, violates 12 C.F.R. § 2605, because Dovenmuehle failed to conduct a reasonable investigation with respect to Plaintiffs' 2019 Application, and failed to correct its servicing error related to same.  Indeed, Dovenmuehle continued to press for foreclosure even though it failed to comply with regulations relating to same.

315.    As a result of Dovenmuehle's failure to respond adequately to Plaintiffs' April 25, 2019 NOE, Plaintiffs incurred additional non-litigation fees for reviewing Dovenmuehle's deficient response by counsel and for the drafting of additional RESPA correspondence in further effort to resolve the servicing errors.

316.    Plaintiffs also suffered out-of-pocket expenses relating to Dovenmuehle's failure to correct their servicing errors in response to Plaintiffs' April 25, 2019 NOE, including postage and copy charges paid to send subsequent RESPA correspondence.

317.    If Dovenmuehle had conducted a reasonable investigation into Plaintiffs' initial

loss mitigation application, it would have understood that Plaintiffs had submitted a complete loss mitigation application and that it was prohibited from taking steps to foreclose on Plaintiffs' Homestead Property under Reg. X and RESPA.  Dovenmuehle's failure to comply with these rules and laws forced Plaintiffs to suffer additional damages in the form of additional legal fees, Chapter 7 filing fees, Chapter 13 filing fees, Chapter 13 Trustee fees, out-of-pocket expenses relating to subsequent RESPA correspondence, in the form of mileage, postage and copy charges and expenses in connection with the Chapter 7 and Chapter 13 cases, including but not limited to the cost of financial management courses associated with same, loss profits from having to miss work to attend Chapter 7 and Chapter 13 meetings, as well as meetings with their counsel.

318.     Dovenmuehle's actions have also damaged Plaintiff in the form of emotional distress based on their failure to comply with the dual-tracking provisions of Reg. X and to review their loss mitigation application properly.

319.     The July 5, 2019 NOE, attached hereto as Exhibit 28, alleges certain errors under RESPA, including but not limited to the fact that Dovenmuehle continually failed to copy Plaintiffs' counsel on correspondence relating to the loss mitigation application process, causing unnecessary delays in a highly time-sensitive process.  Plaintiffs specifically assert that this failure to copy Plaintiffs' counsel (on the June 24, 2019 letter from Dovenmuehle and on other correspondence), constituted a servicing error under RESPA.

320.     In its July 9, 2019 response to the July 5, 2019 NOE, Dovenmuehle failed to address certain errors raised in said NOE; namely, that Defendants failed to copy Plaintiffs' counsel on communications, despite the clear authorization provide by Plaintiffs in each correspondence they sent to Dovenmuehle.  *See* Exhibit 29, *supra*.

321.     Dovenmuehle therefore failed to conduct a reasonable investigation as to why

previous correspondence from Dovenmuehle did not copy Plaintiffs' counsel.

322.    Plaintiffs were damaged by this, because Defendants' failure to copy Plaintiffs' counsel on multiple communications relating to the loss mitigation application created unnecessary delays which made the already time-sensitive modification process more difficult for Plaintiffs. As described herein, this caused Plaintiffs damages in the form of out-of-pocket expenses in the form of mileage, because Plaintiffs had to hand deliver mail received from Dovenmuehle to their counsel.   It also caused emotional distress.  Plaintiffs became stressed over the fact that Dovenmuehle was failing to evaluate their application properly, and instead was rushing the entire process in order to effectuate their illegal goal of foreclosing on their Homestead Property.

323.    Dovenmuehle's July 9, 2019 response indicated that the VA "declined to offer a workout" on Plaintiffs' loan, but did not provide a copy of that communication. *Id*.

324.    Accordingly, Plaintiffs' counsel sent a RFI dated October 30, 2019, attached hereto as Exhibit 35, requesting that Dovenmuehle produce a copy of the denial letter from the VA stating the reasons that Plaintiffs' request for a home loan modification was denied.

325.    Dovenmuehle's November 14, 2019 response to Plaintiffs' October 30, 2019 RFI was completely deficient.   *See* Exhibit 42, *supra*. Dovenmuehle's response stated that it "fully investigated" the issue raised in the RFI and "determined that no action on our part was required based on the following: The Department of Veterans affairs [*sic*] does not generate or mail out approvals or denials of loss mitigation applications to borrowers.  Rather, they communicate their approval or denial of said application directly to the lender/servicer of the loan."   *Id*. Dovenmuehle's response goes on to say that they received the denial in "electronic mail format" and purported to quote a sentence from that email that the "borrower does not show affordability for the proposed modification," but Dovenmuehle failed to attach a copy of that communication

to their response or otherwise provide any substantive response to Plaintiffs' RFI.  *Id.*

326.    To the extent Dovenmuehle was attempting to hide behind semantics in refusing to produce the VA email (by claiming that it had already produced the June 3, 2019 denial letter from Dovenmuehle to Plaintiffs), then such response constitutes an error and is not responsive to Plaintiffs' RFI.

327.    Dovenmuehle's November 14, 2019 response to Plaintiffs' October 30, 2019 RFI, which constitutes a Request for Information under 12 C.F.R. § 1024.36, violates 12 U.S.C. § 2605 because Dovenmuehle failed to conduct a reasonable investigation with respect to Plaintiffs' account and failed to produce the requested documents.

328.    As a result of Dovenmuehle's failure to conduct a reasonable investigation into Plaintiffs' account and produce requested documents in response to Plaintiffs' October 30, 2019 RFI, Plaintiffs have been damaged.  These damages include non-litigation fees relating to the review of Dovenmuehle's deficient response and the drafting of subsequent RESPA correspondence, and multiple conferences between Plaintiffs and counsel regarding the substance of such correspondence.  Plaintiff also suffered out-of-pocket expenses relating to Dovenmuehle's failure to respond to the October 30, 2019 RFI, including postage and copy charges paid to send subsequent RESPA correspondence.

329.    Plaintiffs also suffered emotional-distress damages in the form of stress and anxiety, as discussed more fully herein, based on the fact that Defendants failed to evaluate their loss mitigation application properly, which is an error under RESPA, and based on the fact that Defendants failed to fix the problem after Plaintiffs brought it to their attention through RESPA correspondence.

330.    Accordingly, based on Dovenmuehle's servicing violations under Reg. X and its

failure to address same, Dovenmuehle is liable to Plaintiffs for actual damages, costs, attorneys' fees, and statutory damages of at least $2,000.00 per violation, pursuant to 12 U.S.C. § 2605.

331.    Further, Plaintiffs continued their efforts to resolve Defendants' servicing errors through RESPA correspondence after Plaintiffs filed their Original Complaint in this case. Specifically, Plaintiffs and their counsel sent multiple letters to Dovenmuehle pointing out their errors in servicing the Plaintiffs' Homestead Loan, specifically relating to Defendants' violations of the requirements of Regulation X in evaluating the two loss mitigation applications submitted by Plaintiffs in 2021.

332.    In response to a notice of error, a servicer is required to either correct the error or errors identified by the borrower and provide the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number for further assistance, or conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for the determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contract information, including a telephone number, for further assistance. 12 C.F.R. § 1025.35(e)(1)(i)(A) and (B).

333.    As described *supra,* Dovenmuehle failed to provide Plaintiffs with complete responses to each of Plaintiff's NOEs and failed to conduct a reasonable investigation as to the issues raised in same.

334.    As described above, Plaintiffs sent a July 22, 2021 NOE asserting that Dovenmuehle committed a servicing error by wrongfully rejecting Plaintiffs' May 7, 2021 loss mitigation on the false allegation that Plaintiffs' May 7, 2021 loss mitigation application was

incomplete.  *See* Exhibit 52, *supra*.

335.    Dovenmuehle never communicated to Plaintiffs or their counsel, either orally or in writing, that any of the documents were illegible.

336.    Dovenmuehle's August 5, 2021 response to Plaintiffs' July 22, 2021 NOE, which was sent pursuant to 12 C.F.R. § 1024.35, violates 12 C.F.R. § 2605 because Dovenmuehle failed to conduct a reasonable investigation with respect to Plaintiffs' May 7, 2021 Loss Mitigation Application, and failed to correct its servicing error related to same.  *See* Ex. 54.  Instead, Dovenmuehle asserted no error—that is, "no action is required"—and made the allegation, for the first time in all communications between the parties with regard to the May 7, 2021 Loss Mitigation Application, that certain documents provided by Plaintiffs were illegible.

337.    Dovenmuehle essentially admits the error when it states that has now implemented a "new process… to allow the addition of language to clarify that a document was received but, is illegible or that the document needs to be updated to reflect the new submission date."  Ex. 54.  Dovenmuehle further admits that the documents were, in fact, received.  *Id*.

338.    As a result of Dovenmuehle's failure to respond adequately to Plaintiffs' July 22, 2021 NOE, Plaintiffs incurred additional non-litigation fees for reviewing Dovenmuehle's deficient response by counsel and for the drafting of additional RESPA correspondence in further effort to resolve the servicing errors.

339.    Plaintiffs also suffered out-of-pocket expenses relating to Dovenmuehle's failure to correct their servicing errors in response to Plaintiffs' July 22, 2021 NOE, including postage and copy charges paid to send subsequent RESPA correspondence.

340.    Plaintiffs also incurred legal fees and costs associated with submitting another loss mitigation application after Dovenmuehle failed to evaluate their May 7, 2021 Loss Mitigation

Application.

341.    If Dovenmuehle had conducted a reasonable investigation into Plaintiffs' loss mitigation application, it would have understood that Plaintiffs had submitted a complete loss mitigation application, which triggered Defendants' obligations under 12 C.F.R. 1024.41 to evaluate Plaintiffs' for possible loss mitigation options. Dovenmuehle's failure to comply with these rules and laws forced Plaintiffs to suffer additional damages in the form of additional legal fees, additional Chapter 13 Trustee fees as Mr. McCants was forced to remain in his Chapter 13 bankruptcy case for a significantly longer period of time to accommodate Defendants' unnecessary errors, out-of-pocket expenses relating to subsequent RESPA correspondence, postage and copy charges.

342.    Dovenmuehle's actions have also damaged Plaintiffs in the form of emotional distress based on their continued and protracted failure to comply with the requirements of Reg. X and to review their loss mitigation application properly.

343.    Dovenmuehle's August 5, 2021 response to Plaintiffs' July 22, 2021, which was sent pursuant to 12 C.F.R. § 1024.35, violates 12 U.S.C. § 2605 because Dovenmuehle failed to correct its servicing error related to same.   Specifically, Dovenmuehle *admits* that it committed an error by its "failure to evaluate the borrower for all loss mitigation options available to the borrower as required under 12 C.F.R. § 1024.41(c)(1)(i)" was an error under RESPA: "We acknowledge that it is an error that the review has taken this long to complete." *See* Ex. 57.

344.    Defendants further violated RESPA in response to Plaintiffs' October 12, 2021 NOE by failing to conduct a reasonable investigation and/or provide a valid and plausible explanation as to why it asserted no error as to its failure to the borrowers, timely or otherwise, with a notice in writing stating servicer's determination of which loss mitigation options, if any, it

will offer to borrower on behalf of the owner or assignee of the mortgages as required under 12 C.F.R. § 1024.41(c)(1)(ii).   In its November 23, 2021 response, Dovenmuehle provided no explanation as to why Defendants had not timely provided the required notice, but instead offered a winding and conclusory explanation which was not directly relevant to the stated error or Defendants' obligation to investigate and cure same.   *See* Exhibit 57, *supra*. Dovenmuehle's insufficient explanation does not change the fact that Dovenmuehle failed to provide the written notice required under § 1024.41(c)(1)(ii), and therefore did not cure or resolve the error.

345.   As a result of Dovenmuehle's failure to respond adequately to Plaintiffs' October 12, 2021 NOE, Plaintiffs suffered additional damages in the form of additional legal fees and additional Chapter 13 Trustee fees as Mr. McCants was forced to remain in his Chapter 13 bankruptcy case for a significantly longer period of time to accommodate Defendants' unnecessary errors.

346.   Dovenmuehle's actions have also damaged Plaintiffs in the form of emotional distress based on their continued and protracted failure to comply with the requirements of Reg. X and to review their loss mitigation application properly.

347.   Accordingly, based on Dovenmuehle's servicing violations under Reg. X and its failure to address same, Dovenmuehle is liable to Plaintiffs for actual damages, costs, attorneys' fees, and statutory damages of at least $2,000.00 per violation, pursuant to 12 U.S.C. § 2605.

## COUNT IV
## FRAUD

348.   The allegations in the paragraphs above are realleged and incorporated herein by this reference.

349.   Fraud is "the successful employment of cunning, deception or artifice to circumvent, cheat or defraud another to his [or her] injury." *International Life Insurance Company*

*v. Herbert*, 334 S.W.2d 525, 530 (Tex. Civ. App.—Waco 1960, writ ref'd n.r.e.).

350.    The following elements must be shown to establish common law fraud based on misrepresentation:

- a material representation was made;
- the representation was false;
- when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion;
- the speaker made the representation with the intent that the other party should act upon it;
- the party acted in reliance on the representation; and
- the party thereby suffered injury

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337 (Tex.2011);

*Aquaplex, Inc. v. Rancho la Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (*per curiam*); *De Santis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990).

351.    Defendants made multiple representations to Plaintiffs regarding their ability to enter into the Modification Agreement, including but not limited to the Modification Offer itself, which identifies Village Capital as owner/counter-party to said agreement.   On December 8, 2021, Defendants represented that Village Capital owned the loan by sending Plaintiffs' the Modification Offer and directing Plaintiffs to sign same.  Ex. 58.

352.    Other examples of fraud contained in the Modification Offer include the capitalization of a new unpaid principal balance as a stated debt amount owed by the McCants as "Borrower" to Village Capital as "Lender," including new fees and charges ("other amounts") asserted by Village Capital in ¶ 1 of the Modification, when in fact Village Capital did not own the loan.  In addition, paragraph 2 of the Modification included a promise by the McCants to pay the new UPB to Village Capital by a new stated maturity date, when in fact the McCants did not owe those amounts to Village Capital, which did not have the authority.  The Modification also includes a restatement and enhancement of lien in favor of Village Capital for amounts due under

the note in ¶ 3 of the Modification, when in fact Village Capital no longer held a security interest in the Homestead Property.  *Id*.

353.    Those representations were false, and at the time Defendants made them, they knew them to be so; alternatively, the Defendants made the representations recklessly, as a positive assertion and without knowledge of the truth.

354.    The representations Defendants made to Plaintiffs were material, and Defendants made such representations with the intention that Plaintiffs act upon them, which they did, to their injury.

355.    "Material" is defined in case law as meaning "a reasonable person would attach importance to and would be induced to act on the information in determining his choice of actions in the transaction in question." *Italian Cowboy Partners*, 341 S.W.3d at 337 (quoting *Smith v. KNC Optical, Inc.*, 296 S.W.3d 807, 812 (Tex. App.—Dallas 2009, no pet.)). The record shows that Plaintiffs, in fact, did rely on Defendants' representations, as Plaintiffs signed the Modification in December of 2021 in anticipation that Village Capital would counter-sign same, and subsequently Mr. McCants dismissed his Chapter 13 Bankruptcy Case in reliance on Defendants' statements that Village Capital would sign the Modification.

356.    Defendants' control of the situation put them in a position of superior knowledge over the Plaintiffs. Therefore, their promises of future action for a present concession by Plaintiffs were not mere expressions of opinion; "when an opinion is based on past or present facts ... special knowledge establishes a basis for fraud." *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983). Thus, most simply, "[s]uperior knowledge by one party may also provide the occasion for fraud." *Faircloth*, 898.S.W.2d at 277; *see also Matis v. Golden*, 228 S.W.3d 301, 307 (Tex. App.—Waco 2007, no pet.) Defendants' representatives were at all times in possession of superior knowledge,

which allowed them to consistently mislead Plaintiffs and benefit Defendants.

357.    The injuries caused by Defendants were foreseeable, because Defendants knew and understood that Plaintiffs were acting in reliance on Defendants' representations that Village Capital was the owner of their mortgage loan and had the authority to enter into the Modification Agreement.

358.    Plaintiffs have been damaged as a result of Defendants' fraud, because Plaintiffs have no way to enforce the Modification as to the new owner.   Mr. McCants was also damaged in that he voluntarily dismissed his Chapter 13 case in reliance on Defendants' fraud, leaving him in technical default under the Note and Deed of Trust.  Plaintiffs have also suffered additional damages as set forth herein, including non-litigation attorneys' fees relating to the modification process, fees and expenses relating to the mediation, additional out-of-pocket expenses, lost wages and emotional distress.

359.    Accordingly, Plaintiffs are entitled to recover actual damages in an amount to be proven at trial.

### COUNT V
### FRAUD IN A REAL ESTATE TRANSACTION
### TEX. BUS. & COM. CODE § 27.01 ET AL.

360.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

361.    Defendants' actions satisfy the elements of fraud in a real estate transaction under Texas law. Tex. Bus. & Com. Code § 27.01 *et seq.*

362.    Section 27.01(a) provides that a person commits fraud in a real estate transaction when that person makes a (1) false representation of a past or existing material fact, when the false representation is (A) made to a person for the purpose of inducing that person to enter into a

contract; and (B) relied on by that person in entering into that contract.  Tex. Bus. & Com. Code § 27.01(a).

363.    The elements under the statute differ from common law fraud because there is no requirement to prove the defendant made the alleged misrepresentation either knowing it was false or with recklessness to its truth. *See In re First Merit Bank, N.A.*, 52 S.W.3d 749, 758 (Tex. 2001); *Diversified, Inc. v. Walker*, 702 S.W.2d 717, 723 (Tex. App.—Houston [1st Dist.] 1985, *writ ref'd n.r.e.*).

364.    Plaintiffs have demonstrated the elements of § 27.01(a), in that (1) the Modification Offer, Plaintiffs' acceptance of same, Village Capital's counter-signature on the Modification, and Village Capital's filing the Modification in the real property records, all related to a transaction involving real estate between Village Capital and the McCants wherein Village Capital agreed to modify the terms of the McCants' mortgage loan in exchange for a stream of payments, payment of certain fees and an increased interest rate; (2) in that transaction, Village Capital and Dovenmuehle made false representations, in the December 8, 2021 letter and in other communications, that Village Capital owned the loan, that the McCants had been approved for a loan modification through Village Capital, and that the modification documents must be signed by all parties in black ink, together with other instructions, when in fact Village Capital no longer owned the mortgage loan and therefore could not lawfully agree to the Modification or otherwise bind the new owner; (3) Defendants intended their representations and promises to induce the Plaintiffs in to agreeing to the Modification; (4) Plaintiffs relied on these representations in signing the Modification and in dismissing Mr. McCants' Chapter 13 bankruptcy case as a result, and Plaintiffs made payments under the Modification; (5) Plaintiffs' action in reliance on Defendants' representations injured Plaintiffs, who are now in a technical default of the actual unmodified

mortgage loan and exposed to the collection/foreclosure activities of the new owner and servicer.

365.    Under Tex. Bus. & Com. Code § 27.01(b), a person who makes a false representation or false promise commits a fraud in section 27.01(a) and is liable to the person defrauded for actual damages.  Plaintiffs have suffered actual damages in the form of attorneys' fees and expenses relating to the review of the Modification and participation in the mediation, as well as time off work by Plaintiffs.  Plaintiffs have also suffered mental anguish and emotional distress as a result of Defendants' fraudulent acts.  Plaintiffs have further suffered actual damages resulting from the dismissal of Plaintiffs' Chapter 13 case, made in reliance on Defendants' fraudulent statements, and actual damages resulting from Plaintiffs' technical default under the underlying loan, as described herein.  Plaintiffs further suffered damages in the form of Village Capital's enhanced lien position, which was obtained through fraud in a transaction involving real estate.

366.    On information and belief, Defendants and their counsel were aware of the false statements at the time they were made.  As such, Plaintiffs are entitled to and seek recovery of exemplary damages under Section 27.01(c) of the statute. Actual awareness may be inferred when objective manifestations indicate that the person acted with actual awareness. Tex. Bus. & Com. Code § 27.01(c). "Actual awareness" is demonstrated by the fact that Defendants sent the Modification Offer on a date when Village Capital did not own the loan, negotiated the Modification when Village Capital did not own the loan, and counter-signed the Modification on a date on which Village Capital did not own the loan.  As stated, Village Capital did not counter-sign the Modification Agreement until January 5, 2022, which was after the Notice of Sale effective December 1, 2021 (but dated December 30, 2021 and received by Plaintiffs in mid-January of 2022).

367.    On information and belief, Defendants and their counsel were aware of the false statements at the time they were made, and failed to disclose that falsity, and benefited from this act.  As such, Plaintiffs are entitled to and seek recovery of exemplary damages under Section 27.01(d) of the statute.  Defendants benefitted from their false representations for purposes of Tex. Bus. & Com. Code § 27.01(d), because their false promises induced Plaintiffs to mediate instead of litigating their disputes under the false pretense that Village Capital was capable of modifying the loan.

368.    Plaintiffs are entitled to recover attorneys' fees under Tex. Bus. & Com. Code § 27.01(e), which provides that "[a]ny person who violates the provisions of this section shall be liable to the person defrauded for reasonable and necessary attorney's fees."

369.    Plaintiffs are therefore entitled to recover actual damages under Tex. Bus. & Com. Code 27.01 together with exemplary damages and attorneys' fees.

## COUNT VI
## NEGLIGENT MISREPRESENTATION

370.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

371.    To prevail on a cause of action for negligent misrepresentation, a plaintiff must show:

- a representation made by a defendant in the course of its business or in a transaction in which it has a pecuniary interest;
- the representation conveyed 'false information' for the guidance of others in their business;
- the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and
- the plaintiff suffers pecuniary loss by justifiably relying on the representation.

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 654 (Tex. 2018)(citing

*Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1992)).

372.    The standards for these elements are well-developed in Texas law: (i) "False information" requires a misstatement of an existing fact rather than a promise of future conduct. *Miller v. Raytheon Aircraft Co*., 229 S.W.3d 358, 379 (Tex.App.--Houston [1st Dist.] 2007, no pet.); (ii) "justifiable reliance" usually presents a question of fact. *See Prize EnergyRes., L.P. v. Cliff Hoskins, Inc*., 345 S.W.3d 537, 584 (Tex. App.—San Antonio 2011, pet. denied); (iii) plaintiff must show that the defendant's misrepresentation was a proximate cause of his damages. *See Greenstein, Logan & Co. v. Burgess Mktg., Inc*., 744 S.W.2d 170,189 (Tex. App.--Waco 1987, writ denied).

373.    Significantly, and unlike common law fraud, negligent misrepresentation does not require knowledge of the falsity or reckless disregard of the truth or falsity of the representation at the time it was made. *See Milestone Properties, Inc., v. Federated Metals Corp.*, 867S.W.2d 113, 119 (Tex. App.--Austin 1993, no writ).

374.    The record shows that Defendants' actions satisfy the elements of negligent misrepresentation because the Defendants clearly offered Plaintiffs the Modification Offer on December 8, 2021, seven days after the transfer of the ownership of the loan to RMTP effective as of December 1, 2021, and therefore Village Capital did not own the loan at the time the Modification Offer was made.  As stated, however, the Modification Offer only had a signature line for Village Capital and not the new owner.  Village Capital counter-signed the Modification on January 5, 2022, and recorded same in the real property records of Bell County, Texas.  In making the representations—that Village Capital owned the loan and had the legal authority to agree to the Modification—Defendants supplied false information by which it intended to guide Plaintiffs' actions.  In doing so, Defendants did not exercise reasonable care or competence in obtaining or communicating that information.  Plaintiffs justifiable relied on these statements.

Defendants' negligent misrepresentations proximately caused Plaintiffs' injury, in that they now are in technical default of the actual unmodified contract, and have no means to enforce the terms of the Modification.

375.    Plaintiffs are entitled to recover their actual damages in connection with this claim, in amounts to be shown at trial.

376.    Plaintiffs have been damaged by Defendants' negligent misrepresentation, because Plaintiffs have no way to enforce the Modification as to the new owner.   Mr. McCants was also damaged in that he voluntarily dismissed his Chapter 13 case in reliance on Defendants' negligent misrepresentation, leaving him in technical default under the Note and Deed of Trust.  Plaintiffs have also suffered additional damages as set forth herein, including non-litigation attorneys' fees relating to the modification process, fees and expenses relating to the mediation, additional out-of-pocket expenses, lost wages and emotional distress.

## COUNT VII
## ACTUAL AND EXEMPLARY / PUNITIVE DAMAGES

377.    The allegations in the paragraphs above are realleged and incorporated herein by this reference.

378.    Defendants' actions described herein are violations of RESPA, Regulation X, the TDCA, common law fraud, fraud in a real estate transaction as set forth in Tex. Bus. & Com. Code § 27.01, and negligent misrepresentation, as set forth herein.

379.    Plaintiffs seek imposition of all available damages, penalties, punitive damages, and attorneys' fees available under the law.

380.    Further, under Texas law, Plaintiffs are entitled to exemplary damages for their claims for common law fraud, fraud in a real estate transaction, negligent misrepresentation, and the TDCA because they can show that they were injured by conduct of Defendants which amount

to gross negligence, malice or actual fraud, based on their right to recover damages under the identified causes of action.

381.    Exemplary damages refer to damages awarded as a penalty or by way of punishment but not for compensatory purposes. Tex. Civ. Prac. & Rem. Code § 41.001(5).

382.    Exemplary damages are a form of excess recovery available when a wrong is accompanied by an aggravating circumstance such as malice, fraud, or gross negligence.  Tex. Civ. Prac. & Rem. Code § 41.003(a).

383.    Fraud will support an award of exemplary damages. Tex. Civ. Prac. & Rem. Code §41.003(a)(1).  The record abundantly establishes Defendants' fraudulent and misleading conduct in this case.

384.    In determining the amount of exemplary damages to award, the trier of fact is to consider evidence relating to the following:

  • the nature of the wrong;

  • the character of the conduct involved;

  • the degree of culpability of the wrongdoer;

  • the situation and sensibilities of the parties concerned;

  • the extent to which such conduct offends a public sense of justice and propriety; and

  • the defendant's net worth.

Tex. Civ. Prac. & Rem. Code § 41.011(a).

385.    Under Chapter 41, exemplary damages awarded against any defendant may not exceed the greater of the following: (1) two times the amount of economic damages, plus an amount equal to any noneconomic damages found by the trier of fact, not to exceed $750,000 or (2) $200,000. Tex. Civ. Prac. & Rem. Code § 41.008(b).

386.    Defendants' conduct, as described above, entitles Plaintiffs to exemplary damages

in the amount to be an appropriate punishment for Defendants and to serve as notice to the financial community that similar conduct will not be tolerated.

## ATTORNEYS' FEES

387.    Plaintiffs incorporate herein by reference all preceding paragraphs as if fully set forth herein.

388.    Through the conduct described herein, Defendants have inflicted actual damages upon Plaintiff by taking steps to foreclose on Plaintiffs' property while Plaintiffs' loss mitigation application was still pending, thereby forcing Plaintiffs into two bankruptcy cases.   Plaintiffs have incurred additional damages in the form of bankruptcy fees and expenses, lost opportunity, out of pocket expenses, attorneys' fees in connection with the additional loss mitigation applications, mediation, resulting from Defendants' continued RESPA violations and other bad acts occurring after the filing of the Complaint.

389.    As a result of these bad acts, Plaintiffs have been required to retain counsel to enforce their rights and seek recovery of their damages caused by Defendants.

390.    The Court can award Plaintiffs' attorneys' fees against Defendants pursuant to 12 U.S.C. §2605(f)(3) (RESPA) and § 392.403 of the TDCA, Tex. Bus. & Com. Code § 27.01(e) and the TDCA § 392.403.

## DEMAND FOR JURY TRIAL

391.    Plaintiffs assert their right under the Seventh Amendment to the United States Constitution and demand, in accordance with Fed. R. Civ. P. 38, a jury trial on their claims against Defendants.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs pray that this Court enter its order granting judgment for the following:

A.      For actual damages, costs and reasonable attorney fees;

B.      For statutory damages provided by RESPA;

C.      For exemplary and/or punitive damages for fraud, negligent misrepresentation, fraud in a real estate transaction and the TDCA; and

D.      Such other relief to which the Plaintiffs and their bankruptcy estate may be entitled.

Dated this 12th day of July, 2022.


                                    KELLETT & BARTHOLOW PLLC

                                    */s/ Claude D. Smith*
                                    Karen L. Kellett
                                    State Bar No. 11199520
                                    Claude D. Smith
                                    State Bar No. 24028778
                                    11300 N. Central Expressway, Suite 301
                                    Dallas, TX 75243
                                    Tel.: (214) 696-9000
                                    Fax: (214) 696-9001
                                    karen@kblawtx.com
                                    claude@kblawtx.com

                                    and

                                    Erin B. Shank P.C.

                                    Erin B. Shank
                                    State Bar No 01572900
                                    1902 Austin Avenue
                                    Waco, Texas 76701
                                    Tel: (254) 296-1161
                                    Fax: (254) 296-1165
                                    shankcourtnoticesonly@gmail.com

                                    ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on July 12, 2022, a true and correct copy of the foregoing was served on counsel for Defendants through ECF electronic notice.


*/s/ Claude D. Smith*
Claude D. Smith